In re Eldon D. BLUMER and
Katherine M. Blumer,
Debtors.

CREDIT ALLIANCE
CORPORATION, Appellant,

v.

IDAHO ASPHALT SUPPLY,
INC., Appellee.

B.A.P. No. EW–87–2081–PRV.
Bankruptcy No. 82–01599–214.

United States Bankruptcy Appellate Panel
of the Ninth Circuit.

Argued and Submitted June 15, 1988.

Decided Nov. 18, 1988.

William J. Connor, Horton, Wilkins & Faurholt, Kennewick, Wash., for appellant.

Frank L. Kurtz, Yakima, Wash., for appellee.

Before PERRIS, RUSSELL and VOLINN, Bankruptcy Judges.

## OPINION

PERRIS, Bankruptcy Judge.

This appeal arises from an order allowing the claim of Idaho Asphalt Supply, Inc. as an administrative expense pursuant to 11 U.S.C. §§ 364(a) and 503(b)(1),[1] the denial of reconsideration of the above order and an order denying a request for judicial notice of a deposition. We affirm.

## I. FACTS.

On September 1, 1982, the debtors, Eldon D. Blumer and Katherine M. Blumer ("debtors") filed a Chapter 11 petition. Eldon Blumer was an individually licensed and bonded construction contractor engaged in the road building business. He was also the president of and a shareholder in Prairie Rock, Inc. ("Prairie Rock"), a closely held construction company that had also filed a Chapter 11 petition.

During the pendency of his Chapter 11 case, Eldon Blumer, as an individual, entered into a contract with Benton County to seal coat certain roads. In May of 1983, Mr. Blumer applied for credit for the Benton County project from the appellee, Idaho Asphalt Supply, Inc. ("Idaho Asphalt"). The application for credit identified Mr. Blumer as the contractor and the credit applicant. Idaho Asphalt supplied asphalt for the Benton County project and billed Mr. Blumer personally. Although some invoices were paid, invoices totaling $89,-543.57 were not paid and this amount was past due on July 7, 1983. Mr. Blumer and Idaho Asphalt agreed that interest would be paid on the past due amounts at the rate of 18% per annum.

Prairie Rock's accounting records included as a liability the obligations to Idaho Asphalt. These same records further indicate that Prairie Rock paid the obligations to Idaho Asphalt by disbursements from its

---

1. All references are to the Bankruptcy Code, 11 U.S.C. §§ 101 et seq., unless otherwise indicated.

corporate accounts. However, at least some of the checks which purported to pay for the asphalt were drawn on accounts in the name of Mr. Blumer. When Idaho Asphalt asserted its claim in the bankruptcies, it did so by filing duplicate proofs of claim against the estates of the debtors and Prairie Rock for approximately $90,000, the full amount of the unpaid invoices on the Benton County project.

Subsequent to the transactions between Mr. Blumer and Idaho Asphalt, the bankruptcy court converted the debtors' case to Chapter 7 at their request.

Not long after conversion, the deposition of Robin Blumer, Eldon Blumer's son, was taken because Robin Blumer indicated he would be leaving the state. The majority of the questions in the deposition concerned a contested matter involving the validity of a post-petition deed of trust on the debtors' residence held by Dunning–Ray Insurance Agency, Inc. ("Dunning–Ray"). Neither Idaho Asphalt, nor its counsel, received notice of or was present at the Robin Blumer deposition. The bankruptcy court admitted the Robin Blumer deposition into evidence at a June 13, 1985 hearing involving primarily the validity of the Dunning–Ray deed of trust and the disposition of proceeds from the sale of the debtors' residence. Neither Idaho Asphalt nor its counsel were present at the June 13, 1985 hearing. There is no evidence that Idaho Asphalt received notice of the hearing.

In February of 1985, Idaho Asphalt filed in the debtors' case a Motion for an Order Classifying its Claim as an administrative expense. Appellant Credit Alliance Corporation ("Credit Alliance"), an unsecured creditor of the debtors, objected to this motion. On July 16, 1987, the court below held an evidentiary hearing on Idaho Asphalt's motion. At the hearing, counsel for Credit Alliance and counsel for Dunning–Ray, another creditor objecting to Idaho Asphalt's motion, presented argument based upon evidence revealed in the deposition of Robin Blumer. Neither counsel, however, expressly referred to the Robin Blumer deposition as the source of this evidence, nor did either counsel move for admission or request that the court take judicial notice of the Blumer deposition or request that the court consider it. At the conclusion of the hearing, the bankruptcy court ruled in favor of Idaho Asphalt.

Following the hearing, Idaho Asphalt submitted proposed findings and an order reflecting the court's ruling. Credit Alliance objected to the proposed findings and order. It submitted an opposing set of findings based upon evidence contained in the Robin Blumer deposition, and excerpts from the Robin Blumer deposition. At a September 9, 1987 telephone conference regarding the proposed findings, the bankruptcy court indicated that it would not consider the Robin Blumer deposition and that it would sign the proposed findings and order submitted by Idaho Asphalt. The court entered the order on September 29, 1987. Credit Alliance moved for reconsideration and for judicial notice of the deposition of Robin Blumer. By an order entered October 15, 1987, the bankruptcy court denied the motions for reconsideration and for judicial notice of the Robin Blumer deposition. On October 19, 1987, Credit Alliance filed a timely notice of appeal from the September 29 and October 15 orders.

## II.  ISSUES.

1.  Whether the bankruptcy court erred in refusing to consider the Robin Blumer deposition.

2.  Whether the bankruptcy court erred in determining that Idaho Asphalt extended credit to debtor Eldon Blumer in the ordinary course of business and was entitled to administrative expense priority under section 364(a) and section 503(b)(1).

3.  Whether Credit Alliance is entitled to an award of attorney fees on appeal.

## III.  STANDARD OF REVIEW.

A bankruptcy court's findings of fact will not be reversed unless clearly erroneous. Bankruptcy Rule 8013; *In re Lewis*, 79 B.R. 893, 895 (9th Cir. BAP 1987). Conclusions of law are subject to de novo review. *Lewis*, 79 B.R. at 895.

## IV. DISCUSSION.

### A. *The bankruptcy court's refusal to consider the Robin Blumer deposition.*

#### 1. *The Robin Blumer deposition as part of the record.*

■ Credit Alliance contends that the bankruptcy court erred in refusing to consider the Robin Blumer deposition because, as a previously admitted deposition, it was part of the record in the bankruptcy case. The Ninth Circuit Court of Appeals addressed the question of what evidence a bankruptcy judge can consider from prior hearings in *In re Acequia, Inc.*, 787 F.2d 1352 (9th Cir.1986) when it affirmed the bankruptcy judge's consideration of evidence presented at a prior hearing in ruling on confirmation of a Chapter 11 plan of reorganization. *Acequia* recognizes that a bankruptcy judge *may*, but need not, consider evidence from a prior hearing in the same case if the notice of what will be considered is sufficient to permit the parties to challenge the prior evidence. Based upon the procedural and factual distinctions between this case and *Acequia*, which are discussed more fully below, we hold that the bankruptcy judge did not err in refusing to consider the Robin Blumer deposition.

In *Acequia*, the complaining party received notice through the debtor's Disclosure Statement of the substance, if not the source, of the evidence that would be presented at the confirmation hearing. During the confirmation hearing in *Acequia*, the debtor's counsel referred to the earlier admitted evidence thereby bringing the issue of admissibility of the evidence before the court. Credit Alliance did not offer, refer to or ask the court to consider Robin Blumer's deposition during the hearing.[2] Credit Alliance's counsel merely incorporated the facts allegedly proved by the deposition into its closing argument without indicating its source of proof. It was not until after the end of the hearing on Idaho Asphalt's motion that Credit Alliance first brought the deposition to the attention of the bankruptcy court and opposing counsel. Furthermore, unlike the complaining party in *Acequia*, there is no evidence that Idaho Asphalt received notice of or attended either the deposition or the hearing at which it was introduced.

#### 2. *Judicial notice of the Robin Blumer deposition.*

■ Credit Alliance also contends that the trial court erred in refusing to take judicial notice of the Robin Blumer deposition. It is well established that a court may take judicial notice of its own records. *See United States v. Wilson*, 631 F.2d 118, 119 (9th Cir.1980); *In re Missionary Baptist Foundation of America, Inc.*, 712 F.2d 206 (5th Cir.1983). But this does not mean that a court can take judicial notice of the truth of all documents found within a court's records. That a fact sought to be noticed is found in a court's records is not talismanic; the fact still must be of the type described in Fed.R.Evid. 201 ("Rule 201"). *In re Armorflite Precision, Inc.*, 48 B.R. 994, 996 (D. Maine 1985); *see generally* Wright & Miller § 5106; Russell, *Bankruptcy Evidence Manual*, § 201.5 (West 1987); *see also M/V American Queen v. San Diego Marine Construction*, 708 F.2d 1483, 1491 (9th Cir.1983) (a court may not take judicial notice of otherwise inadmissible statements merely because they are part of a court record or file).

---

**2.** Idaho Asphalt argues that even if Credit Alliance had offered the Robin Blumer deposition into evidence at the July 16, 1987 hearing, it would not have·been admissible as substantive evidence under Fed.R.Civ.P. 32(a) ("Rule 32(a)"), as made applicable to the within contested matter by Bankruptcy Rules 9014 and 7032, because Idaho Asphalt was neither present nor represented at the deposition of Robin Blumer and did not receive notice of the deposition. *See* 9 *Collier on Bankruptcy* ¶ 7032.04 (15th Ed.1988) (quoting 4A *Moore's Federal Practice* ¶ 32.02[2] at 32–12–14 (2d Ed.1987). In addition, Credit Alliance has not shown that Robin Blumer was unavailable to testify at the July 16, 1987 hearing, as would be required to admit the deposition under Rule 32(a)(3). While Idaho Asphalt appears to be correct that the deposition was not admissible under Rule 32(a), a determination that all or part of the record from a prior hearing can be considered by the bankruptcy court at a subsequent hearing may involve considerations not addressed by Rule 32(a). *See Acequia*, 787 F.2d at 1358–1360.

■ Rule 201 allows a court to take judicial notice of facts that are not subject to reasonable dispute in that they are either "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Rule 201. The facts set forth in the Robin Blumer deposition are not "generally known within the territorial jurisdiction of the trial court" or "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Therefore, the bankruptcy court properly refused to take judicial notice of those facts.

■ Finally, Credit Alliance contends that even if the trial court properly refused to consider the Robin Blumer deposition, we can nevertheless consider it as substantive evidence on appeal. The record on appeal is determined by Bankruptcy Rule 8006 which has been construed to mean that the record on appeal should contain all documents and proceedings considered by the court below. *See In re W. T. Grant Co.*, 432 F.Supp 105 (S.D.N.Y.1977) *aff'd without opinion*, 559 F.2d 1206 (2d. Cir. 1977) (construing Bankruptcy Rule 806, the predecessor to Bankruptcy Rule 8006). In the instant case, the bankruptcy court properly refused to consider and enter proposed findings based on the Robin Blumer deposition. Therefore, we refuse to consider the Robin Blumer deposition as substantive evidence on appeal.

B. *The bankruptcy court's determination under sections 364(a) and 503(b)(1).*

■ The extension of credit to a trustee or debtor-in-possession in the ordinary course of business under 11 U.S.C. § 364(a) gives rise to a claim allowable as an administrative expense under 11 U.S.C. § 503(b)(1). 11 U.S.C. § 364(a); 2 *Collier on Bankruptcy* ¶ 364.02 (15th Ed.1988); 3 *Collier on Bankruptcy* ¶ 503.04[1][a][i]. Given the fact that the credit application identified Mr. Blumer, as opposed to Prairie Rock, as the credit applicant and contractor, and given the subsequent delivery of asphalt to Mr. Blumer on credit, the bankruptcy court's determination that Idaho Asphalt extended credit to Mr. Blumer is not clearly erroneous. The issue in the instant appeal, however, is whether Idaho Asphalt extended the credit in the ordinary course of business.[3]

Although the Bankruptcy Code does not define the term "ordinary course of business", the Ninth Circuit has determined that a transaction which meets both the "horizontal" and "vertical" dimension tests is in the ordinary course of business.[4] *See In re Dant & Russell, Inc.*, 853 F.2d 700 (9th Cir.1988). The "vertical dimension" or

---

**3.** As an additional issue on appeal, Credit Alliance contends that the bankruptcy court's order is void because it violates procedural due process and substantive due process. Credit Alliance relies on *In re Center Wholesale*, 759 F.2d 1440, 1445 (9th Cir.1985) and *In re Blumer*, 66 B.R. 109 (9th Cir. BAP 1986) *aff'd without opinion*, 826 F.2d 1069 (9th Cir.1987) as support for its procedural due process claim. *Center Wholesale* and *Blumer* invalidated on due process grounds bankruptcy court orders entered without adequate notice. In the instant case, the challenged order allowing Idaho Asphalt's claim as an administrative expense was entered following an evidentiary hearing. There is no contention that the notice of this hearing was inadequate. Because proper notice and hearing were provided by the court below before it entered its order, Credit Alliance's procedural due process challenge must fail.

Credit Alliance also contends that its substantive due process rights were violated because the court's actions diverted the assets of the debtor's bankruptcy estate to Idaho Asphalt, a creditor without a claim, thereby depriving appellant and other legitimate creditors of the benefit of their bargains. In support of this argument debtor cites E. Flaschen, *Adequate Protection for Oversecured Creditors*, 61 Am. Bankr.L.J. 341 (1987), an article dealing with the means to protect the constitutional and equitable rights of secured creditors having an interest in the debtor's property. This article is not applicable to appellant, an unsecured creditor of the debtors. As the Panel stated in *Blumer*, unsecured creditors have no rights to substantive due process since an unsecured claim confers no rights in specific property of the debtor. 66 B.R. at 114.

**4.** It is unclear whether *Dant & Russell* requires both the "horizontal" and "vertical" dimension tests to be satisfied. Because we decide that the transaction with Idaho Asphalt satisfies both tests, however, we need not address this issue.

"creditor's expectation" test examines the transaction from the viewpoint of a hypothetical creditor and focuses on the creditor's "reasonable expectations of what transactions the debtor-in-possession is likely to enter in the course of its business." *Dant & Russell*, 853 F.2d at 705 (quoting *In re James A. Phillips, Inc.*, 29 B.R. 391, 394 (S.D.N.Y.1983). In utilizing this vertical dimension test, courts look to the nature of the debtor's pre-petition business as compared to its post-petition business, *Dant & Russell*, 853 F.2d at 705. The "horizontal dimension" test applies an industry wide perspective and involves a comparison of this debtor's business to other like businesses and a determination of whether the "transaction is of a type that other similar businesses would engage in as ordinary business." *Id.* at 704.

In the instant case, the bankruptcy court found, and the evidence clearly supports, that the debtor was a contractor engaged in business as a road builder at the time he entered the transaction with Idaho Asphalt. There is no evidence properly before us disputing that this was Eldon Blumer's pre-petition business. Accordingly, this finding is not clearly erroneous.

As a contractor engaged in the road building business, under both the horizontal or vertical tests, Eldon Blumer acted in the ordinary course of business in entering the transaction with Idaho Asphalt. A hypothetical creditor would reasonably expect Eldon Blumer, as a road builder, to obtain asphalt on credit and by doing so debtor did not subject his creditors to unexpected economic risks. Similarly, it is a reasonable assumption that other road builders would obtain asphalt on credit in the ordinary course of their businesses.

Because the bankruptcy court did not err in determining that Idaho Asphalt extended credit to Eldon Blumer in the ordinary course of business, we find that the credit obtained by Eldon Blumer from Idaho As-

phalt falls within the scope of section 364(a) and the bankruptcy court properly allowed the claim Idaho Asphalt as an administrative expense pursuant to sections 364(a) and 503(b)(1).[5]

### C. *Credit Alliance's attorney fees.*

Because Credit Alliance has not prevailed on appeal, it is not entitled to attorney's fees pursuant to 11 U.S.C. §§ 503(b)(3)(A) and 503(b)(4).

### V. CONCLUSION.

For the reasons stated above, we AFFIRM.

---

**5.** We note that the bankruptcy court allowed Idaho Asphalt's claim for principal and interest as an administrative expense pursuant to sections 364(a) and 503(b)(1). Some courts have limited the allowance of the interest portion of a claim pursuant to sections 364(a) and 503(b)(1). See *In re Kenney's Franchise Corp.*, 21 B.R. 461 (Bankr.W.D.Va.1982). This issue, however, was not raised on appeal and accordingly we make no determination as to the bankruptcy court's decision in this regard.