**In re POFF CONSTRUCTION, INC., Debtor.**

**Robert L. POFF, Appellant,**

**v.**

**POFF CONSTRUCTION, INC., et al., Defendants.**

**Bankruptcy No. 7–89–00674. Civ. A. No. 91–363–R.**

United States District Court, W.D. Virginia, Roanoke Division.

Aug. 19, 1991.

Clifford L. Harrison, Stone, Hamrick, Harrison & Turk, P.C., Radford, Va., for Robert L. Poff.

Michael A. Cleary, Woods, Rogers & Hazlegrove, Roanoke, Va., for CentralBanc Mortg. Co. and M.H. Riley Enterprises.

Samuel D. Campbell, Pulaski, Va., for M.H. Riley Enterprises.

Charles H. Osterhoudt, Osterhoudt, Ferguson, Natt, Aheron & Agee, Roanoke, Va., for Branch & Assoc., Inc.

A. Carter Magee, Jr., Magee, Foster, Goldstein & Sayers, Roanoke, Va., for Poff Const., Inc.

## MEMORANDUM OPINION

KISER, District Judge.

This matter is before me on an appeal of an order of the bankruptcy court disallowing a portion of appellant's claim for administrative expenses. The issues have been fully briefed and oral argument was heard on July 23, 1991. The matter is now ripe for disposition. For the reasons set forth below, I must reverse the decision of the bankruptcy court and remand the matter for further proceedings.

## BACKGROUND

The facts in this appeal are undisputed and are laid out in the opinion of the lower court; I adopt those findings by reference. Briefly stated, the relevant facts are as follows. Poff Construction filed a voluntary Chapter 11 petition on April 14, 1989. Soon thereafter, appellant Robert Poff was installed, with court approval, as the head of the debtor corporation. The corporation had a history of cash flow problems, and since 1983, appellant had been making unsecured loans to the debtor. These loans continued post-petition from April 1989 through July 1990. No court approval was obtained for these loans.

The bankruptcy court opinion hints of possible insider dealing by Poff in connection with the loans. In addition to serving as president of the debtor, Poff owned PCI Management, Inc. PCI was employed by the debtor to manage many of the apartment complexes owned by the limited partnership in which the debtor was a general partner. Although Poff's relationship to PCI was well known throughout the Chapter 11 proceeding, the creditors ultimately became "disenchanted" with this relationship and caused Poff to be replaced as president of the debtor corporation.

The appellant filed his claim for administrative expenses on January 30, 1991, claiming, *inter alia*, $128,789.46 in post-petition loans to the debtor. Objections were filed by appellees Centralbanc, Branch, and Riley on the ground that the loans were not made in the ordinary course of business, and therefore § 364(b) required notice, hearing and court approval before the loans could be incurred as administrative expenses.

The bankruptcy court determined that in order for a debt to be incurred in the ordinary course of business within the meaning of § 364, the debt must have been incurred in an ordinary trade credit transaction. That is, the debt must have been incurred through credit extended to the debtor by its suppliers, typically meant to be paid within a single billing cycle. Since Poff was a non-trade creditor, the bankruptcy court found that the debts to Poff were incurred outside the ordinary course of business and thus were required to be pre-approved by the court before they would be allowed as an administrative expense. The debtor had not obtained court approval before Poff extended the loans, thus they were not allowed as administrative expenses.

## DISCUSSION

11 U.S.C. § 364(a) allows the trustee (or debtor in possession if no trustee has been appointed, see § 1107) to incur unsecured debt in the ordinary course of business which will be allowed as an administrative priority under § 503(b)(1). However, § 364(b) requires notice, hearing and court approval before the debtor in possession may incur debt outside the ordinary course of business. Consequently, this appeal turns on what is meant by "ordinary course of business."

Not finding a definition of that phrase within the Bankruptcy Code, the lower court turned to cases from other jurisdictions interpreting "ordinary course of business" in the context of § 547 dealing with preferences.[1] Both *In re Bourgeois*, 58

---

1. Specifically § 547(c)(2) states that the trustee may not avoid an otherwise preferential trans-

B.R. 657 (Bankr.W.D.La., 1986) and *In re Craig Oil Co.*, 785 F.2d 1563 (11th Cir. 1986) determined that debt incurred in the ordinary course of business under § 547 refers to trade credit transactions. The bankruptcy court determined that the same rationale applies to § 364(a) as that section was intended to allow the debtor in possession to continue the business by dealing with its trade creditors as it had pre-petition. Since Poff was a non-trade creditor, the loans he extended were deemed incurred outside the ordinary course of business.

▇ I find the bankruptcy court's definition of ordinary course of business to be far too rigid. While a bright line rule does provide a measure of certainty, the better approach is to examine the totality of the circumstances surrounding the debt. This approach has been used by other courts when interpreting ordinary course of business in the context of various sections of the Bankruptcy Code.

▇ A thorough exposition of the phrase ordinary course of business in the context of § 363 is found in *In re Johns–Manville Corp.*, 60 B.R. 612 (Bankr.S.D.N.Y.1986). The Court identified a two-pronged test for determining whether the debtor acted within the ordinary course of business. The first prong, the vertical component, examines the debtor's action from the standpoint of his creditors. *Id.* at 616–17. This component is largely based on analysis set forth in *In re James Phillips, Inc.*, 29 B.R. 391 (S.D.N.Y.1983):

> The touchstone of 'ordinariness' is thus the interested parties' reasonable expectations of what transactions the debtor in possession is likely to enter in the course of its business. So long as the transactions conducted are consistent with these expectations, creditors have no right to notice and hearing, because their objections to such transactions are likely to relate to the bankrupt's chapter 11 status, not the particular transactions themselves.

29 B.R. at 394. The vertical component necessarily includes an examination of the pre-petition relationship between the debtor and his creditors to determine whether the transaction in question was ordinary in the context of that relationship.

The second prong of the *Johns–Manville* test is the horizontal component which views the creditors actions from the perspective of similar businesses in the debtor's industry. That is, would the transaction in question be considered ordinary by other businesses in the industry. 60 B.R. at 618.

The two-pronged analysis elucidated in *Johns–Manville* has been widely followed by courts interpreting "ordinary course of business" as it is used throughout the Bankruptcy Code. *See, e.g., In re Dant & Russell, Inc.*, 853 F.2d 700, 704–5 (9th Cir. 1988) (interpreting § 363); *In re Blumer*, 95 B.R. 143, 147–48 (Bankr. 9th Cir.1988) (interpreting § 364); *Habinger, Inc. v. Metropolitan Cosmetic and Reconstructive Surgical Clinic*, 124 B.R. 784, 786 (D.Minn. 1990) (interpreting § 363); *In re Industrial Supply Corp.*, 109 B.R. 484, 488 (Bankr. M.D.Fla.1990) (interpreting § 547), *aff'd*, 127 B.R. 62 (M.D.Fla.1991); *In re C.E.N., Inc.*, 86 B.R. 303, 305 (Bankr.D.Me.1988) (interpreting § 364); *In re Hanson Industries, Inc.*, 90 B.R. 405, 414 (Bankr.D.Minn. 1988) (interpreting § 502). Therefore, I find that the *Johns–Manville* analysis should be used in determining whether a debt was incurred in the ordinary course of business in the context of § 364.

▇ In applying the vertical component to the present fact situation, I find it particularly significant that the debtor had borrowed money from Poff to overcome short term cash flow problems for at least six years prior to filing bankruptcy. That the debtor continued the borrowing post-petition should have come as no surprise to the creditors. "Where the debtor in possession is merely exercising the privileges of its chapter 11 status, which include the right to operate the bankrupt business, there is no general right to notice and hearing concerning particular transactions." *In re*

---

fer "to the extent that such transfer was (A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee."

*James Phillips, Inc.,* 29 B.R. 391, 394 (S.D.N.Y.1983). As to the horizontal component, it hardly seems out of the ordinary for a business subject to the seasonal variations of the construction industry to borrow money in order to meet short term obligations such as payroll.

Having said that, I cannot at this point direct the bankruptcy court to enter an order allowing the post-petition loans of appellant as administrative expenses. As I noted, *supra,* the opinion of the bankruptcy court hints of possible insider dealing by Poff which may have affected whether or not the loans were made in the ordinary course of business. Therefore, this matter shall be remanded to the lower court to determine whether, under the two part analysis set forth above, the post-petition debts to appellant were incurred in the ordinary course of business.

### ORDER

For the reasons stated in the Memorandum Opinion filed contemporaneously herewith, it is hereby ADJUDGED and ORDERED that the decision of the bankruptcy court is REVERSED and this action is REMANDED to the bankruptcy court.

The Clerk is directed to send certified copies of this Order to the Clerk of the Bankruptcy Court and to all counsel of record.