**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

In re: STRAIGHTLINE INVESTMENTS, INC.,

*Debtor,*

CHARLES D. AALFS,

*Appellant,*

v.

ANDREA WIRUM, Trustee,*

*Appellee.*

No. 05-15979

BAP No.
NC-04-01497-PSBr

OPINION

Appeal from the Ninth Circuit
Bankruptcy Appellate Panel
Barr, Smith, and Perris, Bankruptcy Judges, Presiding

Argued and Submitted
April 17, 2007—San Francisco, California

Filed May 8, 2008

Before: David R. Thompson, Andrew J. Kleinfeld, and
Sidney R. Thomas, Circuit Judges.

Opinion by Judge Thompson

---

*During proceedings in the bankruptcy court, Charles E. Sims served as the trustee and Plaintiff in this action. After Sims's death, Andrea Wirum was appointed by the bankruptcy court to replace Sims as the trustee. She has also been substituted as the Appellee in this proceeding. *Aalfs v. Sims (In re Straightline Invs., Inc.)*, No. 05-15979 (9th Cir. Apr. 4, 2007) (order substituting Appellee).

5061

**COUNSEL**

Philip M. Arnot, Stephen P. Arnot, The Arnot Law Firm, Eureka, California, for the appellant.

David N. Chandler, Sr., David N. Chandler, Jr., Santa Rosa, California, for the appellee.

**OPINION**

THOMPSON, Senior Circuit Judge:

Appellant Charles D. Aalfs ("Aalfs") appeals a decision by the Ninth Circuit Bankruptcy Appellate Panel ("BAP") affirming the bankruptcy court's judgment under 11 U.S.C. § 549(a) avoiding the transfer to Aalfs of Straightline Investments, Inc.'s ("Debtor" or "Straightline") accounts receivable which had a face value of approximately $200,600. In avoiding the transfer, the bankruptcy court ordered Aalfs to pay the Straightline trustee $163,007, the amount collected by Aalfs

on the transferred accounts, and to transfer back to the trustee all uncollected accounts receivable still in Aalfs's possession.

On appeal, Aalfs contends that the transfer of accounts receivable was not an avoidable transfer under 11 U.S.C. § 549(a) because there was no depletion or diminution of the Debtor's estate. Aalfs paid Straightline $186,455 for the accounts. Aalfs argues that the transfer was an outright sale of receivables in the ordinary course of business, and the defenses of recoupment and earmarking should apply to bar recovery by the trustee. Aalfs also argues that, even if the transfer was avoidable, the bankruptcy court awarded the wrong measure of recovery to the trustee under 11 U.S.C. § 550. We have jurisdiction pursuant to 28 U.S.C. § 158(d), and we affirm both the bankruptcy court's judgment and the BAP's decision upholding that judgment.

## I.   BACKGROUND

Straightline was initially in the business of leasing commercial property. In 1997, it began operating a sawmill and engaging in custom lumber milling, kiln drying of lumber, and log cutting. On September 10, 1997, it filed a Chapter 11 bankruptcy petition. On September 11, 1997, Straightline's president, Matthew Galt, executed an agreement "personally guarantee[ing Aalfs] against all losses from any lending [Aalfs] may do to SLI [Straightline Investments, Inc.] . . . ." On October 20, 1997, Straightline filed a motion in the bankruptcy court seeking to borrow up to $500,000 from Aalfs pursuant to 11 U.S.C. § 364(c). The bankruptcy court authorized Straightline to borrow up to $100,000 from Aalfs, with the loan secured only by a junior lien on Straightline's equipment and a senior lien on Straightline's inventory. The bankruptcy court specifically denied requests to authorize any further borrowing, including loans secured by Straightline's accounts receivable.

Despite this order of the bankruptcy court, beginning on September 30, 1997, and continuing through March 9, 1998, Aalfs advanced money to Straightline in exchange for accounts receivable. Aalfs obtained a discount from Straightline, paying a total of $186,455 for the accounts, while the total face value of those accounts was approximately $200,600. Aalfs collected only $163,007 from the accounts. In his testimony before the bankruptcy court, Aalfs referred to this arrangement with Straightline as a "factoring" transaction.[1]

In April 1998, a Chapter 11 trustee was appointed for Straightline, and the case was converted to a Chapter 7 proceeding. The trustee learned of the postpetition transfers of accounts receivable to Aalfs and filed the complaint in this action to avoid those transactions.

The bankruptcy court held a hearing on the trustee's complaint and issued its memorandum decision granting avoidance of the transfers of the accounts receivable. The BAP affirmed the bankruptcy court's decision, and Aalfs filed a notice of appeal to this court. We initially remanded the case to the bankruptcy court, concluding that the appeal was interlocutory because the bankruptcy court had not yet decided the

---

[1]"Factoring is . . . the sale of accounts receivable of a firm to a factor at a discounted price. In return for selling the accounts receivable at a discounted price, the seller receives two immediate advantages: (1) immediate access to cash; and (2) the factor assumes the risk of loss." *French v. Philip Servs. Corp. (In re Metro. Envtl., Inc.)*, 293 B.R. 893, 895 (Bankr. N.D. Ohio 2003) (internal citations and quotation marks omitted). The risk of loss in this case may not have fallen squarely on the factor's (Aalfs's) shoulders, however, because Straightline's president "personally guarantee[d Aalfs] against all losses from any lending" to Straightline. Factoring can be accomplished either by an actual sale of accounts or through their assignment. *Id.* at 896; *see also Dobin v. Presidential Fin. Corp. of Del. Valley (In re Cybridge Corp.)*, 312 B.R. 262, 265 (D.N.J. 2004) (describing "what is commonly known as a 'factoring' agreement" as a situation where one party advances a loan to the other for a security interest in the other party's accounts receivable).

trustee's second cause of action regarding avoidance of a postpetition transfer of logs. *Aalfs v. Sims (In re Straightline Invs., Inc.)*, 97 F. App'x 79, 79-80 (9th Cir. 2004). On remand, the bankruptcy court entered the same judgment on the accounts receivable claim and denied all of the trustee's other claims. Aalfs again appealed to the BAP, the BAP affirmed the judgment of the bankruptcy court, and this appeal followed.

## II.  DISCUSSION

We review decisions of the BAP de novo. *Price v. U.S. Tr. (In re Price)*, 353 F.3d 1135, 1138 (9th Cir. 2004) (citing *Hanf v. Summers (In re Summers)*, 332 F.3d 1240, 1242 (9th Cir. 2003)). The bankruptcy court's conclusions of law are reviewed de novo, and its findings of fact are reviewed for clear error. *Id.* " 'Under this standard, we accept findings of fact made by the bankruptcy court unless these findings leave the definite and firm conviction that a mistake has been committed by the bankruptcy judge.' " *Rains v. Flinn (In re Rains)*, 428 F.3d 893, 900 (9th Cir. 2005) (quoting *Latman v. Burdette*, 366 F.3d 774, 781 (9th Cir. 2004)).

### A.    Avoidable Transfer Pursuant to 11 U.S.C. § 549

**[1]** Under 11 U.S.C. § 549, a trustee may "avoid a transfer of property of the estate — (1) that occurs after the commencement of the case; and . . . (2) . . . (B) that is not authorized under this title or by the court." 11 U.S.C. § 549(a)(1), (2)(B) (West 2004). "If a trustee seeks to recover a postpetition transfer under section 549, . . . . the trustee must show that a transfer occurred after the filing of the bankruptcy petition and that the transfer was not authorized by either the bankruptcy court or the [Bankruptcy] Code." *Mora v. Vasquez (In re Mora)*, 199 F.3d 1024, 1026 (9th Cir. 1999) (citations omitted).

**[2]** "A 'transfer' is broadly defined by the Code as 'every mode, direct or indirect, absolute or conditional, voluntary or

involuntary, of disposing of or parting with property or with an interest in property . . . .' " *Id.* (quoting 11 U.S.C. § 101(54) (1994)). Therefore, regardless of whether we characterize the transaction between Straightline and Aalfs as a sale or a loan, it constituted a "transfer" under the Bankruptcy Code.

[3] Aalfs argues, however, that Straightline had no control over the money which might be collected from the accounts receivable, and therefore, its transfer of the accounts to Aalfs was not a transfer of estate property. In making this argument, Aalfs fails to recognize the difference between the accounts receivable themselves and the funds paid by the account debtors. It is the transfer of the accounts that is at issue here. *Cf. Tavormina v. Capital Factors, Inc. (In re: Jarax Int'l, Inc.)*, 164 B.R. 180, 182-83, 186 (Bankr. S.D. Fla. 1993) (finding "no transfer of an interest of the [debtor] in property [under § 549] because the [debtor] lacked the requisite control over the funds" where the debtor and defendants had entered into a factoring agreement prior to the filing of a bankruptcy petition). Here, Straightline had a legal interest in its accounts receivable in the form of a right to collect them when it transferred them to Aalfs. *See In re Metro. Envtl., Inc.*, 293 B.R. at 899. Therefore, "a transfer of property of the estate" occurred. *See* 11 U.S.C. § 549(a).

[4] The transfers occurred after the commencement of the bankruptcy case, beginning on September 30, 1997, nineteen days after Straightline filed its Chapter 11 bankruptcy petition. The trustee also established that the transfer of accounts receivable from Straightline to Aalfs was not authorized by the bankruptcy court. *See* 11 U.S.C. § 549(a)(2)(B). The bankruptcy court's authorization for a $100,000 loan from Aalfs to Straightline did not include permission to transfer any of Straightline's accounts receivable to Aalfs. Aalfs conceded as much in his testimony before the bankruptcy court.

Aalfs argues that Straightline's transfer of the accounts receivable to him is not avoidable under § 549 because the

transfers were outright sales of the accounts which were conducted in the ordinary course of Straightline's business, and such sales are allowed under 11 U.S.C. § 363(c). Before addressing this argument, we first consider Aalfs's contention that the transfer of accounts receivable did not result in a depletion or diminution of Straightline's estate and therefore cannot constitute an avoidable transfer under § 549.

### B.   Depletion or Diminution of the Estate

Of the three cases cited by Aalfs in support of his estate depletion argument, only one of them tends to help him, and that is the *In re Cassis* decision from the Northern District of Iowa, in which the court stated: "There must be a depletion of the estate for there to be an avoidable transfer under § 548 or § 549." *Cambridge Tempositions, Inc. v. Cassis (In re Cassis)*, 220 B.R. 979, 983 (Bankr. N.D. Iowa 1998) (citing *In re Jarax Int'l, Inc.*, 164 B.R. at 185). But neither *In re Cassis* nor *In re Jarax* applied the depletion of the estate proposition to a claim of an avoidable postpetition transfer under § 549. Instead, *In re Cassis* dealt with a complaint to avoid a fraudulent transfer under § 548, and the court in *In re Jarax* only discussed depletion of the estate in the context of prepetition preferential transfers under § 547 and fraudulent transfers under § 548, *not* postpetition transfers under § 549. *In re Cassis*, 220 B.R. at 982; *In re Jarax Int'l, Inc.*, 164 B.R. at 185-87; *see also Adams v. Anderson (In re Superior Stamp & Coin Co., Inc.)*, 223 F.3d 1004, 1007 (9th Cir. 2000) (applying the "diminution of estate" doctrine to determine whether transferred property belongs to the debtor for purposes of § 547). The third case cited by Aalfs — *In re Bame* — simply held that the trustee was not entitled to a money judgment for an avoidable postpetition transfer because there was no proof that the estate suffered damages on account of the defendant's actions. *Ramette v. Al & Alma's Supper Club Corp. (In re Bame)*, 252 B.R. 148, 162 (Bankr. D. Minn. 2000).

**[5]** The question whether depletion of the estate is a requirement for finding a transfer avoidable under § 549 is an

open question in this circuit. Although the diminution of estate theory is commonly viewed as a prerequisite for avoidability of prepetition preferential transfers under 11 U.S.C. § 547 and fraudulent transfers under 11 U.S.C. § 548, *see In re Superior Stamp & Coin Co., Inc.*, 223 F.3d at 1007; *In re Smith*, 966 F.2d 1527, 1535-36 (7th Cir. 1992); *Nordberg v. Sanchez (In re Chase & Sanborn Corp.)*, 813 F.2d 1177, 1181 (11th Cir. 1987); *Deel Rent-A-Car, Inc. v. Levine*, 721 F.2d 750, 755-56 (11th Cir. 1983); *In re Cassis*, 220 B.R. at 982; *In re Jarax*, 164 B.R. at 185-87, only the Sixth Circuit has considered the diminution of estate doctrine in a case involving the avoidance of a post-petition transfer under § 549. *See Peoples Bank & Trust Co. v. Burns (In re Shelton)*; 244 F. App'x 634 (6th Cir. 2007). In that case, the Sixth Circuit stated that the doctrine of "earmarking" was inapplicable. However, in an earlier decision in the same case the appellate panel had indicated that "earmarking" might apply if the transaction in question did "not result in a diminution of the estate's value." *Id.* at 637 (citing the panel's earlier decision, *Peoples Bank & Trust Co. v. Burns (In re Shelton)* 95 F. App'x 801, 804 (6th Cir. 2004)). When the case came back after remand, the court stated the question was whether it should reconsider its earlier decision. *Id.* at 638. The court decided it had no basis to do so because the parties had stipulated there had been no diminution of the bankruptcy estate and thus there would be no "manifest injustice" by letting the earlier decision stand, even though it contained an erroneous resolution of the "earmarking" question. *Id.* at 639.

**[6]** We decline to expand the diminution of estate doctrine, from its established application in § 547 and § 548 cases, to this § 549 case. Although the primary purpose of 11 U.S.C. § 549 is to allow the trustee to avoid post-petition transfers of property which deplete the estate, *see* 5 Lawrence P. King, *Collier on Bankruptcy* § 549.02 (15th ed. 2005), the plaintiff's failure to demonstrate a measurable depletion of the estate is not enough to allow a transfer to stand when it is otherwise

avoidable under § 549 because it satisfies all of the explicit requirements of an avoidable postpetition transfer.²

### C.   Ordinary Course of Business

Aalfs also argues that the transfer to him of Straightline's accounts receivable falls within the "ordinary course of business" exception to avoidable postpetition transfers under 11 U.S.C. § 363(c). Section 363(c)(1) of the Bankruptcy Code provides that "[i]f the business of the debtor is authorized to be operated under section . . . 1108 . . . of this title and unless the court orders otherwise, the trustee may enter into transactions . . . in the ordinary course of business, without notice or a hearing . . . ." 11 U.S.C. § 363(c)(1) (West 2004). Section 1108 permits a trustee to operate a debtor's business unless the bankruptcy court orders otherwise. *Id.* § 1108. Additionally, 11 U.S.C. § 1107 grants a debtor-in-possession under Chapter 11 all of the same rights and powers as a trustee. *Id.* § 1107(a). "A determination of whether a transaction falls outside the ordinary course of business is a question of fact that depends on the nature of industry practice." *Ganis Credit Corp. v. Anderson (In re Jan Weilert RV, Inc.)*, 315 F.3d 1192, 1196 (9th Cir. 2003) (citing *Arrow Elecs., Inc. v. Justus (In re Kaypro)*, 218 F.3d 1070, 1073 (9th Cir. 2000)).

**[7]** Two tests have emerged for determining whether a transaction is within the ordinary course of business for purposes of § 363(c) — the vertical dimension, or creditor's expectation, test, and the horizontal dimension test. *Burling-*

---

²In the present case, the trustee may have shown there was a depletion of the estate because cash worth only $186,455 was substituted for accounts receivable with a face value of approximately $200,600, leaving the estate with a diminished overall asset total. Although Aalfs only recovered $163,007 from the accounts he obtained, we do not know whether a greater amount could have been recovered had Straightline, rather than Aalfs, been the entity seeking payment. *But see In re Cybridge Corp.*, 312 B.R. at 271 ("[A]ccounts [receivable] are only valuable once they are reduced to cash (which . . . is what [the transferee] did with them).").

*ton N. R.R. Co. v. Dant & Russell, Inc. (In re Dant & Russell, Inc.)*, 853 F.2d 700, 704 (9th Cir. 1988). If both tests are satisfied, the court must conclude that the challenged transaction occurred in the debtor's ordinary course of business. *Id.* at 705; *see also Credit Alliance Corp. v. Idaho Asphalt Supply, Inc. (In re Blumer)*, 95 B.R. 143, 147 & n.4 (B.A.P. 9th Cir. 1988) (stating that "the Ninth Circuit has determined that a transaction which meets both the 'horizontal' and 'vertical' dimension tests is in the ordinary course of business[,]" but "[i]t is unclear whether *Dant & Russell* requires both the 'horizontal' and 'vertical' dimension tests to be satisfied"); *In re Media Cent., Inc.*, 115 B.R. 119, 124 (Bankr. E.D. Tenn. 1990) ("If either test or dimension is not satisfied, most likely the disputed transaction is not in the ordinary course of business.").

### 1. Vertical Test

**[8]** "The vertical dimension, or creditor's expectation test, views the disputed transaction 'from the vantage point of a hypothetical creditor and inquires whether the transaction subjects a creditor to economic risks of a nature different from those he accepted when he decided to extend credit.' " *In re Dant & Russell, Inc.*, 853 F.2d at 705 (quoting *Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986)). In determining whether the transaction meets the vertical dimension test, courts often look to the debtor's prepetition business practices. *Id.* at 705 n.7. This conduct is then compared to the debtor's postpetition business activities. *In re Johns-Manville Corp.*, 60 B.R. at 617. Stated differently, "[t]he vertical component necessarily includes an examination of the pre-petition relationship between the debtor and his creditors to determine whether the transaction in question was ordinary in the context of that relationship." *Poff v. Poff Constr., Inc. (In re Poff Constr., Inc.)*, 141 B.R. 104, 106 (W.D. Va. 1991).

It is difficult to make a fair comparison of the Debtor's business activities before and after its filing for bankruptcy because Straightline only entered the custom milling business a few months before filing its bankruptcy petition. Before that, it was in the business of leasing commercial real estate. There were no accounts receivable transferred from Straightline to Aalfs before September 10, 1997, the date that Straightline filed its Chapter 11 petition. Straightline's president, Matthew Galt, testified that when Straightline was in the custom milling business prior to filing its Chapter 11 petition, it often sold accounts receivable to its vendors, but the most common aspect of these "sales" was a prepaid discount of the customer's accounts, rather than actual sales of the accounts to third parties.

Straightline's predecessor in the custom milling business, North Coast Hardwoods, had obtained loans from Six Rivers Bank, and those loans were partially secured by accounts receivable. Straightline had also obtained a loan from Six Rivers Bank, but it was secured only by real estate. Six Rivers Bank's senior vice president, Evelyn Giddings, testified that she would not have expected Straightline to sell its accounts receivable at the time it obtained a loan, but at that time, Straightline was still only in the business of leasing real estate, and it had no accounts receivable.

[9] The bankruptcy court found that, even if the transfer of Straightline's accounts receivable to Aalfs was a true sale and not part of a disguised loan transaction, it was not accomplished in the ordinary course of business because Straightline's creditors would have expected notice and a hearing before such transactions occurred. That was because the bankruptcy court had previously been asked to rule on the possibility of Straightline obtaining a loan using its accounts receivable as collateral, and that request had been denied. The bankruptcy court found that "[c]reditors would have reasonably expected that from that time forward they would be

given notice of any attempt to transfer the receivables." That finding is not clearly erroneous.

**[10]** Nor was the bankruptcy court clearly erroneous in its finding that the "sales" of accounts receivable to Aalfs were actually part of a disguised loan transaction. Aalfs had been given Matthew Galt's personal guarantee of full repayment, and in correspondence between employees of Straightline and Aalfs there were references to Aalfs's payments for the accounts as "advances." *See Fireman's Fund Ins. Cos. v. Grover (In re The Woodson Co.)*, 813 F.2d 266, 271-72 (9th Cir. 1987) (stating that guarantee against risk of loss is a feature that "seems to result in a finding of a debtor-creditor relationship in most cases" and noting that "[l]abels cannot change the true nature of the underlying transactions"); *NetBank, FSB v. Kipperman (In re Commercial Money Ctr., Inc.)*, 350 B.R. 465, 474 (B.A.P. 9th Cir. 2006) (stating that "the bankruptcy court's decision on the loan versus sale issue . . . is a factual determination that we review for clear error"). We conclude that the vertical dimension test is not satisfied.

### 2. Horizontal Test

**[11]** Under the horizontal dimension test, the question is "whether the postpetition transaction is of a type that other similar businesses would engage in as ordinary business." *In re Dant & Russell, Inc.*, 853 F.2d at 704 (citations omitted). For example, "raising a crop would not be in the ordinary course of business for a widget manufacturer because that is not a widget manufacturer's ordinary business." *Johnston v. First St. Cos. (In re Waterfront Cos., Inc.)*, 56 B.R. 31, 35 (Bankr. D. Minn. 1985). The purpose of the horizontal test is " 'to assure that neither the debtor nor the creditor [did] anything abnormal to gain an advantage over other creditors . . . .' " *In re Dant & Russell, Inc.*, 853 F.2d at 704 (quoting *In re Johns-Manville Corp.*, 60 B.R. at 618).

**[12]** In determining whether a challenged transaction is ordinary for the industry, it may be helpful to compare the

debtor's activities to the activities of its predecessor in business. *See id.* at 705. Aalfs argues that Straightline's own witness, Evelyn Giddings of Six Rivers Bank, testified that factoring was common for financially distressed and startup businesses. But Giddings's testimony was equivocal on the subject. She testified that Six Rivers Bank engaged in both lending against and purchasing accounts receivable from various entities, but she did not know if such transactions were ordinarily entered into in the custom milling industry. The common thread in Giddings's testimony was that companies who entered into factoring agreements were usually in financial straits when they did so. In addition, Aalfs admitted it was not particularly common for businesses to sell their accounts receivable outright, as opposed to obtaining a general accounts receivable line of credit.

**[13]** We conclude that Aalfs failed to show that the sale of accounts receivable by a custom milling business was the type of transaction "that other similar businesses would engage in as ordinary business." *Id.* at 704; *see* Fed. R. Bankr. P. 6001 (West 2005) (placing the burden of proof on the entity asserting the validity of a postpetition transfer under § 549). As for Straightline's predecessor in the custom milling business, North Coast Hardwoods, that entity did not sell its accounts receivable outright; instead, it obtained a line of credit through Six Rivers Bank which it secured by its receivables.

**[14]** The sale of Straightline's accounts receivable did not satisfy the horizontal dimension test for sales in the ordinary course of business under 11 U.S.C. § 363(c)(1). Even if using accounts receivable as security for loans was common in Straightline's industry, any loan from Aalfs to Straightline above $100,000 and any loan secured by collateral other than Straightline's equipment and inventory would have violated the bankruptcy court's order and would have been avoidable and invalid on that basis. *See* 11 U.S.C. § 363(c)(1) (allowing the trustee to "enter into transactions . . . in the ordinary

course of business," "*unless the court orders otherwise*") (emphasis added).

### D.   Defenses Asserted by Aalfs

Aalfs raises the defenses of earmarking and recoupment. For the reasons hereafter stated, he is not entitled to either defense.

#### 1.   Earmarking

**[15]** "[T]he earmarking doctrine applies 'when a third party lends money to a debtor for the specific purpose of paying a selected creditor.' " *In re Superior Stamp & Coin Co., Inc.*, 223 F.3d at 1008 (quoting *Hansen v. MacDonald Meat Co.* (*In re Kemp Pac. Fisheries, Inc.*), 16 F.3d 313, 316 (9th Cir. 1994)).

> [T]he earmarking doctrine requires: "(1) the existence of an agreement between the new lender and the debtor that the new funds will be used to pay a specified antecedent debt; (2) performance of that agreement according to its terms; (3) the transaction viewed as a whole . . . does not result in any diminution of the estate."

*Id.* (quoting *McCuskey v. Nat'l Bank of Waterloo (In re Bohlen Enters., Ltd.)*, 859 F.2d 561, 566 (8th Cir. 1988)).

**[16]** Here, Aalfs paid money to Straightline in exchange for Straighline's accounts receivable. Aalfs contends he was not a "lender," but even if he were, the money he paid was not paid under any agreement that it would be used to pay a specific debt. Nor was there any showing as to how the money Aalfs paid was used by Straightline. And, as previously stated, there arguably was a diminution in the value of Straightline's estate because of the discount at which its receivables were sold to Aalfs.

**[17]** Because the requirements of the earmarking doctrine are not satisfied, the defense of earmarking does not apply.

> 2. Recoupment

"The doctrine[ ] of . . . recoupment [is] equitable in nature, and [its] use by the bankruptcy court is permissive [and] reviewed for an abuse of discretion." *Oregon v. Harmon (In re Harmon)*, 188 B.R. 421, 424 (B.A.P. 9th Cir. 1995) (citing *Pieri v. Lysenko (In re Pieri)*, 86 B.R. 208, 210 (B.A.P. 9th Cir. 1988)).

**[18]** "Recoupment . . . involves a netting out of debt arising from a single transaction." *Id.* at 425. " 'Its function is to reduce the amount demanded, but only to the extent of the plaintiff's claim.' " *Id.* (quoting *Long Term Disability Plan of Hoffman-La Roche, Inc. v. Hiler (In re Hiler)*, 99 B.R. 238, 243 (Bankr. D.N.J. 1989)). "[R]ecoupment 'is the setting up of a demand arising from the *same transaction* as the plaintiff's claim or cause of action, strictly for the purpose of abatement or reduction of such claim.' " *Newbery Corp. v. Fireman's Fund Ins. Co.*, 95 F.3d 1392, 1399 (9th Cir. 1996) (quoting 5 *Collier on Bankruptcy* ¶ 553.03, at 553-15 (15th ed. 1984)).

Aalfs paid $186,455 for receivables having a face value of approximately $200,600. Aalfs argues that the trustee's recovery in this case should be subject to his right to recoup the $186,455 he paid for the accounts in the first place. In Aalfs's opinion, in keeping with the equitable principle of recoupment, the trustee should recover nothing because the amount the estate already received is greater than the dollar amount of damages the bankruptcy court awarded to the trustee.

**[19]** The doctrine of recoupment does not apply here, however, because it is an equitable remedy and equitable remedies may not be invoked to compensate someone who has engaged in inequitable conduct. Aalfs and Galt essentially effected a

transfer of Straightline's accounts receivable to Aalfs in contravention of the bankruptcy court's order prohibiting such a transfer. They contend that the transaction was a sale in the ordinary course of business, notwithstanding that Aalfs advanced the money to Straightline for the accounts under an agreement with Galt that he would be repaid in full. That was a disguised loan which the bankruptcy court had precluded, yet Aalfs went ahead with it anyway. Aalfs engaged in inequitable conduct, and he is not entitled to the equitable remedy of recoupment. *See United States v. Arkison (In re Cascade Rds., Inc.)*, 34 F.3d 756, 762 (9th Cir. 1994) (affirming bankruptcy court's conclusion that equitable principle was not available to party who engaged in inequitable conduct).

*E. Appropriate Measure of Recovery Under 11 U.S.C. § 550*

"The bankruptcy court's choice of remedies is reviewed for an abuse of discretion." *Bankr. Receivables Mgmt. v. Lopez (In re Lopez)*, 345 F.3d 701, 705 (9th Cir. 2003) (citing *Stone v. San Francisco*, 968 F.2d 850, 861 (9th Cir. 1992)). Section 550(a) of the Bankruptcy Code provides that "to the extent that a transfer is avoided under section . . . 549 . . . , the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from— (1) the initial transferee of such transfer . . . ." 11 U.S.C. § 550(a) (West 2004).

The bankruptcy court entered judgment against Aalfs in the amount of $163,007 — the amount he collected from the accounts receivables — plus interest, costs, and the return of the remainder of the uncollected accounts. Aalfs contends this resulted in a windfall to the Debtor's estate because the Debtor had already received the $186,455 that Aalfs paid for the accounts.

[20] Section 550 provides for recovery of the property transferred and avoided under § 549 or for recovery of the

value of that property. *Id.* By awarding the trustee the sum of what Aalfs collected on the accounts plus the uncollected accounts, the bankruptcy court ordered a monetary recovery for part of the value of the improperly transferred property and ordered the return of the remainder of the uncollected accounts.[3] The BAP affirmed this award, but the dissenting BAP judge believed the trustee should only have been allowed to recover the amount to which Straightline's estate was damaged — the difference between the $200,600 face value of accounts receivable transferred to Aalfs and the $186,455 Straightline received from Aalfs.

**[21]** Generally, the purpose of § 550(a) is " 'to restore the estate to the financial condition it would have enjoyed if the transfer had not occurred.' " *Acequia, Inc. v. Clinton (In re Acequia, Inc.)*, 34 F.3d 800, 812 (quoting *Morris v. Kan. Drywall Supply Co. (In re Classic Drywall, Inc.)*, 127 B.R. 874, 876 (D. Kan. 1991)). Aalfs and the dissenting BAP judge contend that if the recovery awarded to the estate under § 550(a) results in the estate being any better off financially than it was prior to the avoidable transfer, the recovery would be improper because the estate would receive a "windfall."

There is some caselaw to support this view. In *In re Cybridge Corp.*, a bankruptcy court in New Jersey held that although the postpetition transfer of accounts receivable from the debtor was avoidable under § 549, the transferee was entitled to a credit for property already returned to the estate where the transferee had advanced funds to the debtor in exchange for a security interest in the debtor's accounts receivable, the transferee had collected less money from the

---

[3]Although the statute contains the conjunction "or," at least one court has held that the remedies of the value of the property or the property itself are not mutually exclusive, and the bankruptcy court may award a judgment that involves both types of recovery, as long as it does not result in double recovery for the estate. *Feltman v. Warmus (In re Am. Way Serv. Corp.)*, 229 B.R. 496, 531 (Bankr. S.D. Fla. 1999) (citing 11 U.S.C. §§ 102(5), 550(a), (d)).

receivables than it had advanced, and the transferee had no knowledge of the bankruptcy proceeding until after its advancement of cash. *In re Cybridge Corp.*, 312 B.R. at 265, 269, 272. The New Jersey court based its conclusion on § 550(d)'s limitation of recovery to "a single satisfaction" and on the permission granted bankruptcy courts pursuant to 11 U.S.C. § 105(a) to issue equitable orders not violative of other code provisions. *In re Cybridge Corp.*, 312 B.R. at 268-69. Central to its analysis under both subsections were considerations of equity. The court expressed concern that if the trustee were permitted to recover the cash collected on the accounts receivable in addition to the money paid by the transferee for a security interest in those accounts, this would encourage debtors to take advantage of "unsuspecting creditors" by continuing to enter factoring agreements after the filing of a bankruptcy petition, failing to tell the creditors about the bankruptcy case, and later recovering the funds collected by the innocent creditors. *Id.* at 270.

A recent decision of the Bankruptcy Court for the Southern District of Florida on this issue was also influenced by concerns regarding equity. *See Bakst v. Sawran (In re Sawran)*, 359 B.R. 348 (Bankr. S.D. Fla. 2007). The bankruptcy court there held that the defendants were entitled to an equitable credit for the amount of prepetition cash transfers made to the debtor because the court found that they were "innocent of wrongdoing and deserve[d] protection under the[ ] circumstances." *Id.* at 354. Also important to the bankruptcy court's holding in *In re Sawran* was its finding that the defendants "were not motivated by personal gain . . . ." *Id.*

**[22]** The situation here is different. Aalfs was fully aware of Straightline's bankruptcy petition when he advanced funds to Straightline in exchange for the accounts receivable. Aalfs was no "unsuspecting creditor." Even the *Acequia* case relied on by Aalfs held that requiring the return of the wrongfully-transferred property to the estate was the proper course of action where the debtor had a greater equitable claim to the

property than did the transferee. *In re Acequia, Inc.*, 34 F.3d at 812 ("[E]ven if the recovery did constitute a 'windfall,' Acequia[, the debtor,] has a greater equitable claim to the transferred [estate] funds than does Clinton, the wrongdoer."). That is true here as well. Although the bankruptcy court's judgment may allow the Debtor's estate theoretically to remain $186,455 ahead of where it would have been in the absence of any transfer, the estate has a greater equitable claim than does Aalfs. Aalfs was fully aware that Straightline was in bankruptcy proceedings and that the bankruptcy court had previously denied Straightline's request to obtain loans secured by its accounts receivable. The uncollected accounts and the $163,007 which he collected should be returned to the estate for the benefit of the estate's creditors instead of remaining in Aalfs's hands. It was he, after all, who joined Straightline's president in attempting to circumvent the bankruptcy court's order. *See id.* at 811 (discussing § 550(a)'s requirement of recovery for the benefit of the estate, which includes direct and indirect benefits to creditors).

**[23]** Finally, the Ninth Circuit BAP has noted that the Bankruptcy "Code contains no provision which would allow [a transferee] to set off the amount he paid for the [avoidably transferred property] against the value of the [property]." *Walsh v. Alpha Fin. Group (In re Rice)*, 83 B.R. 8, 13 (B.A.P. 9th Cir. 1987). That is exactly what Aalfs is attempting to do here — set off the amount he paid for the accounts receivable against the value of the accounts. The only exceptions to recovery under § 550(a) are made for (1) good faith transferees who took property subsequent to the initial transferee and (2) non-insider prepetition transferees who receive property originally transferred for the benefit of an insider. 11 U.S.C. § 550(b)-(c) (West 2004). Even a good faith transferee is not protected beyond a possible lien on the property, and he is only protected if he is the initial transferee. *Id.* § 550(a)-(b), (e). Section 550 is thus substantially less protective of transferees than it is of the estate. The bankruptcy court did not abuse its discretion in determining that the remedy in this case

should be the recovery by the trustee of the $163,007 Aalfs collected, plus all remaining uncollected accounts. *See In re Lopez*, 345 F.3d at 705 (applying abuse of discretion standard to bankruptcy court's choice of remedy).

## III. CONCLUSION

We affirm the bankruptcy court's avoidance of the postpetition transfer to Aalfs of Straightline's accounts receivable under 11 U.S.C. § 549(a), and conclude that the bankruptcy court's finding that the transaction was a disguised loan in contravention of its earlier order was not clearly erroneous. We also affirm the bankruptcy court's decision that the transfers of accounts were not conducted in the ordinary course of Straightline's business under 11 U.S.C. § 363(c).

[24] The bankruptcy court did not err in rejecting Aalfs's asserted defenses of earmarking and recoupment because Aalfs did not satisfy the requirements of earmarking, and his inequitable conduct barred him from recoupment benefits. Finally, we affirm the recovery awarded to the trustee under 11 U.S.C. § 550 as an appropriate equitable remedy.

**AFFIRMED.**