RUSSO v. DAVIS, Director General of Railroads.

(Circuit Court of Appeals, Seventh Circuit. December 5, 1922.)

No. 3138.

1. Carriers ⬤⟹175—Connecting carriers charged with knowledge of change of destination of shipment and of party to be notified on arrival thereof.

Under Comp. St. §§ 8604a, 8604aa, the initial and all subsequent carriers are charged with knowledge that, after the original shipment was begun, the consignors surrendered their order bills of lading and had new ones issued, changing the point of destination of the goods and designating another party as the one to be notified on arrival of the shipment.

2. Carriers ⬤⟹83—Bonds for production of bill of lading unenforceable after carrier retakes the goods.

Bonds given by the notify party specified in order bills of lading on taking the goods from the carrier without producing the bills, conditioned on subsequent production of the bills of lading, are unenforceable after the carrier retakes possession of the goods.

3. Carriers ⬤⟹69(3)—Carrier has burden of showing restriction on claim agent's authority to negotiate settlement between carrier and receiver of goods.

A carrier's claim agent, particularly charged with the duty of securing the freight mistakenly turned over to the wrong party, was clearly acting within the scope of his general authority in negotiating a settle-

⬤⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

ment of. all claims between the carrier and the receiver of the goods, and if there was any limitation of his authority, the burden was on the carrier to establish such restriction, and a charge that the burden was on the other party to show authority to make the particular agreement was erroneous.

4. **Carriers ⬅︎69(3)—Evidence held to show conclusively agent had authority to release liability on bond.**

In an action on bonds given to a carrier for the production of bills of lading covering shipments delivered without their production, evidence *held* to show conclusively that the carrier's agent, who negotiated for a return of the goods, had authority to release the shipper's liability on the bonds.

In Error to the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Action at law by James C. Davis, Director General of Railroads, against Andrea Russo, doing business as Andrea Russo & Co., to recover on two bonds given for the production of bills of lading covering two shipments delivered to defendant. Judgment for plaintiff, and defendant brings error. Reversed.

George Packard, of Chicago, Ill., for plaintiff in error.

John A. Sheean, of Chicago, Ill., for defendant in error.

Before BAKER and EVANS, Circuit Judges, and GEIGER, District Judge.

EVAN A. EVANS, Circuit Judge: We will designate the parties as they appeared in the District Court.

Plaintiff sued defendants on two bonds by them given to the Chicago & Northwestern Railway Company, one for $5,000 and one for $6,000, conditional upon their production of two bills of lading for two cars of tomatoes shipped by Zerilla & Lafata from California to Chicago, Ill., the shipment originating with the Northwestern Pacific Railway Company, but carried into Chicago by the Chicago & Northwestern Railway Company. Each car was consigned to the order of the consignors, but contained a notation, "Notify Russo & Co., 466 W. Chicago Ave."

The carrier's agent at Chicago, following directions. notified defendants, who, having negotiated with consignees and believing themselves to be the owners as a result of such negotiation, responded to the notice and asked for the delivery of both cars, stating that they did not at the time possess the bills of lading, but would present them as soon as they arrived. They believed, and so expressed themselves, that sight drafts would accompany the bills of lading, or that they would appear shortly at one of the banks and be duly presented, and they promised that as soon as received they would be delivered to the carrier. As a result, the carrier delivered both cars to defendants upon their executing the two indemnity bonds upon which this action is predicated.

A verdict for the plaintiff resulted, and several assignments of error are presented, but in view of our conclusion it is unnecessary to

⬅︎For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

recite any facts other than those that relate to one assignment which is well taken.

[1] After the original shipment was begun, the consignors surrendered their bills of lading and new ones were issued, changing the point of destination from Chicago to New York, and designating another party as the one to be notified upon arrival of the shipment. While this fact was unknown to defendants and to the carrier's agent at Chicago, it was, of course, a matter of information chargeable to the initial and to all subsequent carriers. Sections 8604a. 8604aa, U. S. Compiled Statutes 1916. The two cars were thereafter, and while in transit, sold by the consignors.

Unable to produce their bills of lading, defendants were confronted with a liability on their bonds. Upon the trial, if nothing else were shown, their liability would have been established. But it is defendants' contention that an accord and satisfaction was disclosed, and the judgment should have been in their favor. It appears that, when defendants learned that they could not produce the bills of lading, they wrote the carrier as follows:

"Andrea Russo & Company.

"Chicago, Ill., Jan. 31—19.

"Chicago & Northwestern R. R., Mr. H. C. Howe, F. C. A., Chicago, Ill.—Gentlemen: Your No. W—43753—36743. We acknowledge receipt of your letter of the 25th inst. relative to the above matter. Beg to advise that we are unable to obtain bills of lading covering two carloads of canned goods which you delivered to us under bond. Last report that we have from the shipper is that he will call on us in the near future with bills of lading. These two shipments are in our warehouses in the same condition as we received them from you, and if you desire to withdraw them from our warehouses you may do so.

"Yours very truly,          A. Russo & Company,
"NR*AP                                    Per N."

This letter was followed by another:

"Andrea Russo & Company.

"Chicago, Ill., June 14—19.

"Chicago & Northwestern R. R., Mr. H. C. Howe, Agent, 226 W. Jackson Blvd., Chicago, Ill.—Gentlemen: We inclose herewith a list of charges which have accrued on two cars of tomatoes covered by No. 19138 CGW and 135783. We shall be pleased to receive our cheque to cover these charges.
"NR–AP          Yours very truly,          A. Russo & Company,
"Lists                                    Per ——."

Still another letter was written, quite similar in tenor, on July 11th, to which the general freight claim agent of the carrier replied. Two more letters, somewhat of the same character, were written, and one Mundy, freight claim agent for the Northwestern Pacific Company, called upon the defendants respecting their liability for the receipt of the two cars and in respect to the defendants' claim for freight and storage shares. As a result of their negotiations, defendants signed a release reading:

"Release.

"In consideration of Thomas Porcaro, representing G. Mizzalma, having paid us two thousand two hundred eleven dollars and fifty-nine cents ($2,-

211.59) to cover all expenses (including freight, demurrage, storage, cartage and handling) on twenty-four hundred (2,400) cases of tomatoes received by us in cars GN 211147 and CGW 19138 on November 22 and December 19, 1918, we hereby release and forever discharge W. D. Hines, Director General of the United States Railroad Administration, and the Northwestern Pacific Railway and Chicago & Northwestern Railway, and any other carrier, from any and all claims we now have or may have against them on these shipments.                    A. Russo & Co., per Chas. Russo.

"Dec. 9, 1919.
"Witness: Al Mundhenk, C. & N. W. Ry., Chicago, Ill."

To secure this release the carrier paid defendants $2,211.59 for freight, hauling, and storage charges; the former being much the largest part of the bill. Upon this defense of accord and satisfaction, the judge charged the jury as follows:

"In order that you may find that there was such an accord and satisfaction in this case, you must find, first, that such an arrangement was entered into between the parties; one of the express considerations being that the bonds should be canceled and surrendered. In order that you may find that there was such an agreement that the bonds should be canceled and surrendered, you must find that the man Mundy, with whom it is claimed this arrangement was made, was the agent of the railroad company, or of the Director General, and that he had authority to cancel and surrender those bonds and make that arrangement which it is claimed was made with Russo & Co.

"The burden is upon the defendant in this case to show this accord and satisfaction, and this agency of Mundy, because, if Mundy did not have authority to cancel and surrender those bonds, then there could be no binding agreement here upon the Director General."

To the charge exceptions were taken. Not only do we think the charge was erroneous, but our examination of the record convinces us that Mundy's agency was so conclusively established, and defendants' liability on the bonds so clearly extinguished, that a judgment dismissing the action should have been entered.

[2] The bonds called for the payment of certain sums in case of the nondelivery of the bills of lading. Upon the breach of the condition of the bond, the carrier, of course, could sue on the bond to collect a money judgment. But this was not its only remedy. It could bring suit to recover possession of the freight erroneously delivered, provided it remained in the hands of the party who received it. By accepting a return of the freight, it necessarily released the bondsmen from liability on the bond. For surely the carrier has not the right to recover the goods delivered through mistake to the wrong party, and at the same time enforce a liability upon a bond given by the recipient of the merchandise under the mistaken notion that it belonged to him. If there is any exception or limitation to this statement, and any right on the part of the carrier to pursue its remedy upon the bond remains, that right must be due to a reservation by it made when the possessor of the merchandise delivered it to the carrier.

As we analyze the court's charge to the jury, we conclude this was its theory of the case. But error occurred in charging that defendants had the burden, upon the facts disclosed, of showing the agent's authority to bind the carrier in negotiating for the merchandise and

to terminate defendants' liability. Error was also committed in submitting to the jury any issue of the agent's authority.

[3] Where, as here, the individual negotiating the settlement was admittedly the carrier's claim agent and particularly charged with the duty of securing the freight mistakenly turned over to the wrong party, the burden of showing that such agent's authority is restricted and limited to securing the freight, and does not extend to the mutual satisfaction of conflicting claims, rests upon the carrier, and not upon the individual dealing with the carrier through such agent. In this instance, Mundy was clearly acting within the scope of his general authority. If his authority was limited or restricted, the burden was upon the carrier to bring notice of such restricted authority home to the defendants prior to the completion of the negotiations.

The evidence showed that the agent, Mundy, had authority to settle the carrier's claim against the defendants, and also to settle the defendants' claim against the carrier. But it was not necessary that the evidence affirmatively and expressly establish such authority on Mundy's part. For if he was authorized to represent the carrier in securing the return of the merchandise, he was necessarily authorized to pay the freight which the defendants had advanced and to bind the carrier by settlement relinquishing the defendants from all liability under the bond. If on this issue any doubt existed, the carrier's action in accepting the release, retaining the two cars of tomatoes and paying defendants the freight, cartage, and storage charges, removed the doubt and constituted a ratification.

[4] Examining the record, we fail to find any evidence showing the defendants had knowledge of any limitation of Mundy's authority, assuming there was any such limitation. Ignoring the positive testimony of Andrea Russo and his two sons, and looking to the testimony of Mundy only, we conclude that the fair construction of his alleged reply to questions put to him by Russo merely meant that he personally did not have authority to turn over the possession of the bonds, the written instruments themselves. But such a statement was no denial of authority to deal respecting the recovery of the freight, which dealing, if fruitful, necessarily terminated liability on the bond. Plaintiff too strongly stresses the significance and the necessity of the physical delivery of the bond to defendants. This was not necessary to terminate liability thereon. When defendants and Mundy completed their negotiations, and the carrier paid defendants for the freight advances, for cartage and storage, and the defendants returned the two carloads of tomatoes to the carrier, all liability upon the bonds terminated, and it mattered not who retained the physical possession of them.

We conclude that the record shows conclusively that defendants' liability on their bonds was terminated.

The judgment is reversed, with costs.