## NORTHWESTERN CASUALTY & SURETY CO. v. ILLINOIS CENT. R. CO.

Circuit Court of Appeals, Seventh Circuit. June 8, 1927.

No. 3843.

1. Carriers ⬅83—Surety's bonds to carrier, securing latter against loss through delivery of freight shipments to principal without surrender of bill of lading, held valid (Bills of Lading Act, §§ 9–12, 14 [Comp. St. §§ 8604e–8604ff, 8604gg]).

Surety company's bonds to carrier, to secure latter against loss through delivery to principal of shipments of freight without surrender of order bill of lading, *held* not void as against public policy, in view of Bills of Lading Act, §§ 9–12, 14 (Comp. St. §§ 8604e–8604ff, 8604gg), notwithstanding provision in bill of lading and tariff requiring surrender of bill of lading before delivery of goods.

2. Carriers ⬅83—In statute providing for delivery of freight without bill of lading "lost, stolen, or destroyed," should be broadly construed (Bills of Lading Act, § 14 [Comp. St. § 8604gg]).

In Bills of Lading Act, § 14 (Comp. St. § 8604gg), providing that court may order delivery on proof of loss, theft, or destruction of bill of lading, and on giving carrier security against loss, "lost, stolen, or destroyed" should be broadly construed to include any circumstance whereunder, for time being, bill of lading is in effect lost to owner.

In Error to the District Court of the United States for the Eastern District of Illinois.

Action by the Illinois Central Railroad Company against the Northwestern Casualty & Surety Company. Judgment for plaintiff, and defendant brings error. Affirmed.

From the declaration it appears that plaintiff in error, a surety company, executed, as surety, 14 bonds to defendant in error, an interstate carrier, to secure the latter against loss through delivery to the principal of the bonds, Danks Sugar Company, of various shipments of freight, without being first required to surrender to the carrier the "order" bill of lading covering each such shipment, each such bill of lading having the clause: "The surrender of this bill of lading, properly indorsed, shall be required before delivery of the property." The shipments were all of sugar, consigned to order of shipper, Chicago, Ill., notify Danks Sugar Company at Chicago. Each recites that "said principal makes claim that

he is entitled to receive such shipment, but is unable to produce and surrender the bill of lading issued therefor," and the condition is that if the principal, within ten days, surrender to the carrier the original bill of lading, duly indorsed, or, in case it is lost, furnish carrier satisfactory evidence of loss, and shall indemnify and hold harmless the carrier against loss, etc., arising out of such delivery without production and surrender of the bill of lading, or for nonobservance of any provision of the bill with reference to delivery, the obligation to be void.

The declaration alleges that as to each shipment Danks Sugar Company represented to the carrier it was the owner of the bill of lading and legally entitled to the shipment; that the bill of lading covering shipment had not been received, and asked the carrier to deliver to it the shipment without surrender of the original bill of lading,. which the carrier declined to do unless indemnified by a surety bond, which was as to each shipment accordingly given, and relying on same the carrier delivered to Danks Sugar Company the several shipments; that Danks Sugar Company did not surrender to the carrier the bills of lading, or do any of the things whereby the several bonds, by their terms, would be exonerated; but, on the contrary, that 11 of the bills of lading were negotiated by Danks Company, and that upon 3 of them drafts, drawn by the shippers, were extant, wherefore the carrier became liable to pay, and did pay, to the holders of the various bills of lading upwards of $50,000, for which the action on the bonds was brought, and judgment awarded the carrier.

Kemper K. Knapp, of Chicago, Ill.; for plaintiff in error.

Edward C. Craig, of Chicago, Ill., for defendant in error.

Before ALSCHULER, EVAN A. EVANS, and ANDERSON, Circuit Judges.

ALSCHULER, Circuit Judge (after stating the facts as above). [1] As stated in surety company's brief: "The contested issues in this case are issues of law. Are the bonds void as against public policy, and are the doors of the courts closed to the plaintiff who presents the bonds as the foundation of its suit?" Elsewhere in the brief the grounds for the alleged invalidity are stated that "the bonds were given by the principal in the bonds to induce the railroad company (1) to violate its express contract; (2) to violate the express provisions of its tariff on file with the Interstate Commerce Commission, and then in force and effect; and (3) thereby to commit a crime."

The "express contract" is that made by the bill of lading, particularly the clause "the surrender of this original bill of lading, properly indorsed, shall be required before delivery of the property," and the tariff alleged to have been transgressed is that embodying as a part this form of bill of lading; and carrier's alleged "crime," the transgression of the tariff through delivery of ·this shipment without requiring surrender of the bill of lading. Many citations are made of cases bearing on requirement of carriers' strict adherence to tariffs, and their liability for departure therefrom, most of them having no necessary relation to the question here.

Are these indemnity contracts inherently so tainted with fraud and impropriety that public policy forbids the carrier from having the benefit of them, and thus discharging the surety company from liability thereon? Only the plainest dictate of the law could so penalize the one and release the· other.

If the federal Bills of Lading Act has application, then the defense is without merit. Section 9 of the act is: "A carrier is justified, subject to the provisions of the three following sections, in delivering goods to one who is—(a) A person lawfully entitled to the possession of the goods, or (b) the consignee named in a straight bill for the goods, or (c) a person in possession of an order bill for the goods, by the. terms of which the goods are deliverable to his order; or which has been indorsed to him, or in blank by the consignee, or by the mediate or immediate indorsee of the consignee." Comp. St. § 8604e.

Section 10 (Comp. St. § 8604ee) provides inter alia for liability of the carrier in case of delivery of goods on surrender of order bill of lading where, before delivery, carrier has timely notice that deliveree was a person not lawfully entitled to possession of the goods. Sections 11 and 12 (Comp. St. §§ 8604f, 8604ff) fix carrier's liability to good-faith purchaser for value of bill of lading, on delivering goods where bill of lading is ortstanding, without requiring surrender of same, regardless of whether holder acquired it before or after delivery of goods.

The conceded effect of these statutes is that the carrier may, at its own risk, deliver without requiring surrender of bill of lading. If not prohibited from making delivery, but may do so at its own risk, it necessarily follows that there is no impropriety in the carrier taking indemnity against loss

on account of the risk which such delivery involves.

[2] Then there is section 14 (Comp. St. § 8604gg), which provides that where bill of lading has been "lost, stolen or destroyed," a court may order delivery on proof of loss, theft or destruction, and on giving carrier security against loss: "Provided, a voluntary indemnifying bond without order of court shall be binding on the parties thereto." As to this proviso it is contended it has no application here, since its context is such that it must be limited to instances where the bill of lading is "lost, stolen or destroyed," whereas such claim is not here made nor recited.

We are of opinion that the phrase, "lost, stolen, or destroyed," should be freely and broadly construed, to include any circumstances whereunder, for the time being, the bill of lading is, in effect, "lost" to the owner, as where it does not reach him in sufficient time for prompt delivery of the freight, so that he may obtain delivery by indemnifying the carrier against loss through the outstanding bill; and the carrier may, in good faith, take such indemnity and make delivery to one claiming to be "a person lawfully entitled to the possession of the goods," as specified in section 9(a), or to whom delivery may be made without surrender of the order bill as indicated in sections 10, 11, and 12.

But, says the surety company in its brief: "It will of course be understood that we are not arguing that the railroad company in this case was induced by the bonds in question to violate the *Bills of Lading Act.* What the railroad violated was its *express promise* in its bill of lading and the express *provision of the tariff.* * * * The bills of lading in this case went farther than the Bills of Lading Act. The railroad by express words promised that it would require the surrender of the bill of lading *before* the delivery of the goods." If this contention be accepted at its face, it follows that the bill of lading alone as a contract, and as a part of the tariff, must govern, wholly unaffected by the Bills of Lading Act.

If the surrender clause of the bill of lading must, in any event, inflexibly and literally prevail as contended, there can be no possible circumstances whereunder the carrier may lawfully deliver, or the owner receive the shipment, without actual surrender of the bill of lading. Whether this be lost, strayed, or stolen, destroyed or existent, could make no difference; "it is so nominated" in the bill and the tariff, and no exception being noted there can be none, without breach of the contract, and incurrence of criminal liability for departure from the tariff. Accidental destruction of the bill could not relieve the carrier from his contract and tariff obligation to hold the shipment until the bill is actually surrendered, nor permit the owner to receive the goods until such surrender.

So, also, with delays in sending or receiving the bill. Misdirection, misplacement, tornado, flood, hold-up, air mail accidents, or other contingencies too numerous and various for statement, might interrupt or postpone surrender of the bill. Under such circumstances must the carrier, at all hazard, hold on to the shipment, and the owner be kept out of the goods? Must commerce, to this extent, be suspended, and the public and carrier as well inconvenienced? If this is not so it must follow that under such circumstances the carrier may properly waive his right to hold the shipment until surrender of the bill of lading, and arrange with the owner for prompt delivery upon such terms as are fair, the most obvious being the taking of security against loss to the carrier through delivery without surrender of bill.

That such situations constantly confront carriers and the public is manifest from the very nature of things. At this one station of this carrier, there are daily 10 to 15 such transactions, each involving the giving of an indemnity bond, many of them by this surety company, a considerable part, if not all, of whose business was furnishing such indemnity to railroads under like situations. Its power of attorney to its agent at Chicago authorizes him to execute "indemnity bonds covering the delivery of freight without the surrender of bills of lading in favor of various railroad companies."

After shipment is made, those who are interested in it are the owner and the carrier, and we cannot see any reason why, in order to effect more promptly that prompt delivery to the owner which is the prime object of transportation, the parties in interest may not arrange for an earlier delivery than would, in many cases, be possible if, in any event, it must await arrival and surrender of bill of lading. What public policy is thereby transgressed, we cannot perceive.

If the carrier may, without surrender of the bill, deliver to the actual owner, without thereby transgressing public policy, it must follow that it may take indemnity from one who claims ownership, to secure the carrier against loss by reason of delivery without

surrender of bill of lading, since the carrier does not, by the delivery, relieve itself from liability to one holding the bill.

That a carrier might not be permitted to recover on such an obligation where, knowingly and in bad faith, it delivers the goods to one not entitled to them, is beside the question. But these transactions were in the usual and ordinary course of the business of the carrier, as well as of the surety company, without suggestion of bad faith or obliquity on the part of either.

In the briefs for the surety company much tender consideration is expressed for the interest of banks, which, in such transactions, ordinarily make advances on the faith of attached order bills of lading. But nothing here, or in such transactions generally, justifies this disinterested anxiety. So far as we know the banks are not complaining. Indeed, the apparent promptness with which in this instance the carrier made good the claims of the banks upon their presentation of bill of lading tends to emphasize the public convenience which is subserved through such transactions, and to negative any suggestion that public policy is thereby transgressed.

Review of the numerous decisions cited in the briefs will not be undertaken. They largely bear on questions of the binding force of tariffs and of carrier's liability for delivering goods without surrender of the bill of lading. The case of Pere Marquette Ry. Co. v. French, 254 U. S. 538, 41 S. Ct. 195, 65 L. Ed. 391, involved the question of a carrier's liability for delivery of freight without requiring surrender of an order bill of lading which contained same clause as that here relied on. In its decision of the case the court said: "There is nothing in the act which imposes upon the carrier a specific duty to the shipper to take up the bill of lading. Under section 8 the carrier is not obliged to make delivery except upon production and surrender of the bill of lading; but it is not prohibited from doing so. If, instead of insisting upon the production and surrender of the bill, it chooses to deliver in reliance upon the assurance that the deliveree has it, so far as the duty to the shipper is concerned, the only risk it runs is that the person who says that he has the bill may not have it."

There was in this and the other cited cases no suggestion that by the mere omission first to require surrender of bill of lading a public policy was violated or a crime committed. The court held that if the failure to take it up resulted in loss to another, the delivery might be treated as a conversion by

the carrier and it must respond accordingly; that under the circumstances there appearing, the loss did not result from failure to take up the bill, saying: "To hold a carrier liable under such circumstances would seriously interfere with the convenience and the practice of business."

In the case of Russo v. Davis (C. C. A.) 285 F. 231, the court had under consideration a question of liability under a bond given to indemnify a carrier against loss through delivery of goods without surrender of bill of lading. The cause was decided on its merits, without suggestion by counsel or court of impropriety in such a transaction or its transgression of public policy.

Whether tested by the statute, the contract, the tariff, or all together, we cannot perceive wherein even remotely these transactions run counter to any law or public policy.

The judgment is affirmed.