

**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | ) BAP No.      CC-11-1183-PaHPe |
| | ) |
| ADVANCED BEAUTY SOLUTIONS, LLC, | ) Bk. No.      SV 06-10076-GM |
| | ) |
| Debtor. | ) Adv. No.      SV 08-01363-GM |
| _____ | ) |
| | ) |
| | ) |
| CIRTRAN CORPORATION, | ) |
| | ) |
| Appellant, | ) **M E M O R A N D U M**[1] |
| | ) |
| v. | ) |
| | ) |
| ADVANCED BEAUTY SOLUTIONS, LLC, | ) |
| | ) |
| Appellee. | ) |
| _____ | ) |

Argued and submitted on November 16, 2011
at Pasadena, California

Filed - February 8, 2012

Appeal from the United States Bankruptcy Court
for the Central District of California

Hon. Geraldine Mund, U.S. Bankruptcy Judge, Presiding

---

Appearances:    Thomas J. Burns of Durham Jones & Pinegar, P.C., argued for appellant CirTran Corporation; Samuel Joel Romero of Shulman Hodges & Bastian LLP argued for appellee Advanced Beauty Solutions, LLC.

Before:   PAPPAS, HOLLOWELL and PERRIS,[2] Bankruptcy Judges.

---

[1]   This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

[2]   The Honorable Elizabeth L. Perris, United States Bankruptcy Judge for the District of Oregon, sitting by designation.

CirTran Corporation ("CirTran") appeals the bankruptcy court's order denying its "Motion to Declare Judgment Fully Satisfied or Alternatively to Recoup Mutual Debts" in its ongoing litigation with chapter 11[3] debtor Advanced Beauty Solutions, LLC ("ABS"). In addition to challenging the merits of the bankruptcy court's decision, CirTran also argues, for the first time in this appeal, that the bankruptcy court lacked subject matter jurisdiction to enter the underlying judgment in favor of ABS in the adversary proceeding and, based upon the Supreme Court's recent ruling in Stern v. Marshall, 131 S.Ct 2594 (2011) ("Stern"), that the Panel should vacate that judgment and order the court to dismiss this adversary proceeding. We AFFIRM.

**FACTS**

While the appellate record is difficult to navigate,[4] the

---

[3] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. The Federal Rules of Civil Procedure are referred to as "Civil Rules."

[4] The Panel has been handicapped in its review of this appeal by the cavalier approach taken by CirTran in its preparation and submission of excerpts of the record required by Rules 8009 and 8010. Those excerpts did not include numerous critical documents, and the copy of the bankruptcy court's tentative ruling concerning CirTran's Motion to Declare Judgment Fully Satisfied was incomplete. As a result, we have exercised our discretion to consult the bankruptcy court's docket in the bankruptcy case and adversary proceeding to obtain copies of these important pleadings. O'Rourke v. Seaboard Surety Co. (In re E.R. Fegert), 887 F.2d 955, 957-58 (9th Cir. 1988); Atwood v. Chase Manhattan Mrtg. Co. (In re Atwood), 293 B.R. 227, 233, n.9 (9th Cir. BAP 2003).
Instead of providing relevant documents in its excerpts, in its briefs CirTran referred often to the bankruptcy docket in support of its factual allegations. Even then, it usually referred only to the docket number, with no indication of the precise location of the information within the document so identified. Several docket items referenced by CirTran spanned voluminous pages. This practice is inappropriate; opposing parties and the court are not obliged to search the entire record
(continued...)

-2-

following facts appear to be undisputed.

ABS developed a personal hair care product it called the True Ceramic Pro™ Infra Red Ionic Styler (the "Product"), used primarily for straightening or curling hair. ABS enlisted the services of several manufacturers to produce the Product, but on January 19, 2005, it contracted with CirTran to be its exclusive manufacturer.

ABS marketed the Product via television "infomercials" which, initially, were well-received. However, in its first year, the Product was plagued by design flaws and defects.

ABS filed for protection under chapter 11 on January 24, 2006. Shortly thereafter, on January 26, 2006, ABS filed a motion in the bankruptcy court for approval of the sale of substantially all of its assets to a third party via an auction. After some procedural wrangling with various creditors, the bankruptcy court conducted a hearing concerning the proposed sale on February 24, 2006, at which time it approved the sale of ABS's assets to CirTran, the high bidder. The court directed ABS and CirTran to formalize the terms of the sale in an Asset Purchase Agreement ("APA"). They did so, and the APA was later approved by the court in an order entered June 7, 2006. According to the order approving the sale, the ABS assets to be sold included: "all the copyrights to the True Ceramic Pro – Live Ops (TCPS) infomercial and the master tapes relating to same and . . . all trademarks, patents, patent applications and copyrights relating to the True Ceramic Pro product and all advertising and marketing materials

[4](...continued)
unaided for error. <u>Dela Rosa v. Scottsdale Mem. Health Sys., Inc.</u>, 136 F.3d 1241 (9th Cir. 1998); <u>Syncom Cap. Corp. v. Wade</u>, 924 F.2d 167, 169 (9th Cir. 1991).

related thereto." Sale Order of June 7, 2006, at ¶ Q.

Under the terms of the APA, CirTran paid ABS $1.25 million in cash, forgave $750,000 of ABS's debt to CirTran, assumed certain liabilities of ABS, and agreed to pay ABS royalties of $3 per unit of the Product it sold (the "Profit Share Obligation"), up to a maximum of $4,135,000. In exchange, ABS transferred the assets described above to CirTran, and agreed that CirTran would have an allowed unsecured claim in the bankruptcy case in the amount of $1,600,000.

CirTran defaulted on making payments to ABS on the Profit Share Obligation under the APA at least three times. The first default occurred in August 2006, after only two payments had been made in June and July 2006. A second default occurred in February 2007.

On March 9, 2007, ABS filed an adversary complaint against CirTran in the bankruptcy court, alleging that CirTran had breached the APA by failing to pay royalties to ABS on the Products CirTran had sold. The parties then negotiated a settlement agreement in which CirTran acknowledged that it owed ABS $130,000 in royalties for the first quarter of 2007, and agreed to pay ABS weekly payments of $12,500. The bankruptcy court approved the parties' stipulation to dismiss the adversary proceeding on July 31, 2007.

ABS alleges that CirTran defaulted a third time on royalty payments in December 2007. ABS filed a second adversary complaint against CirTran on May 29, 2008, to recover for breach of the APA, account stated, unjust enrichment, accounting and receivership, seeking compensatory damages of $102,459, plus unspecified amounts

-4-

of consequential and punitive damages.

CirTran did not respond to the ABS complaint, and on September 8, 2008, the clerk entered a default against CirTran. ABS moved for entry of a default judgment on February 24, 2009. To support its request for an award of damages, ABS submitted to the bankruptcy court the declaration of Richard Nelson, an expert witness retained to determine and testify about the net present value to ABS of the expected stream of royalties under the Profit Share Obligation terms of the APA. In the report attached to and incorporated in Nelson's declaration, he opined that,

> Based on our analysis, as described in this valuation report, the estimate of value of Net Present Value of Expected Royalty Payments, Asset Purchase Agreement between Advanced Beauty Solutions, LLC and CirTran Corporation dated May 2006 (Royalties section 2.4) as of June 30, 2006 was $1,975,235.

CirTran did not oppose the ABS motion for entry of default judgment, and on March 17, 2009, the bankruptcy court entered a default judgment in favor of ABS and against CirTran for $1,812,321.61, including costs and attorneys fees ("ABS's Judgment").

Several months later, on July 20, 2009, CirTran filed a motion in the adversary proceeding under Civil Rule 60(b) to set aside ABS's Judgment, arguing, inter alia, that it had not received notice of the ABS motion for default judgment, and that the amount of damages awarded by the bankruptcy court in ABS's Judgment was not consistent with Cirtran's accounting. CirTran also asserted that any judgment entered against it should be offset by its $1.6 million creditor's claim against ABS that had been allowed in the bankruptcy case.

The bankruptcy court conducted a hearing on CirTran's motion to set aside ABS's Judgment on August 19, 2009. After hearing from counsel, the court denied the motion, finding clear evidence that CirTran had indeed received notice of the ABS motion, and because CirTran had offered no meritorious defense to the ABS complaint. CirTran filed an appeal of the bankruptcy court's denial of its motion, but the district court dismissed that appeal on November 17, 2009, for failure to prosecute.

On February 17, 2010, in an effort to enforce and collect the default judgment, ABS filed an "Application for Turnover Order" in the adversary proceeding, seeking an order from the bankruptcy court directing CirTran to transfer to ABS the stock and membership certificates of CirTran's subsidiaries. CirTran filed no opposition, and the bankruptcy court granted the application, and entered a turnover order on March 17, 2010. On March 22, 2010, CirTran filed an objection and a motion for reconsideration regarding the turnover order. CirTran's primary objection to the order was that it violated Cal. Code Civ. Proc. §§ 700.130 and 700.040, because it directed that the certificates be delivered to ABS, rather than to a levy officer as required by state law. On April 26, 2020, the bankruptcy court granted CirTran's reconsideration motion in part, modifying the turnover order to direct that the certificates be delivered to a levy officer rather than to ABS.

In its next attempt to collect on ABS's Judgment, on June 15, 2010, ABS filed an Application for an Assignment Order and Charging Order in the adversary proceeding. In this application, ABS sought an order requiring that CirTran assign to ABS the

copyrights, trademarks, and patents sold to CirTran via the APA. CirTran filed an opposition to this application on June 23, 2010, claiming that it was unable to comply because its creditor, YA Global Investments, held a perfected security interest in all CirTran's assets, including those described in the application.

After a hearing on August 4, 2010, the bankruptcy court, on August 13, 2010, entered an order granting the assignment motion in part by directing that CirTran assign only the copyrights to ABS, but not any trademarks or patent rights subject to the security interest of YA Global. On September 9, 2010, CirTran filed a notice in the adversary proceeding indicating that it had complied with the bankruptcy court's order, and attaching a copy of an executed Assignment of Copyrights.

Concerning ABS's request for an assignment of the trademarks and patents subject to YA Global's security interest, the bankruptcy court ordered CirTran and YA Global to file supplemental briefing detailing payments made by CirTran to YA Global. The supplemental briefing showed that there were no outstanding amounts due to YA Global from CirTran. On September 22, 2010, the bankruptcy court entered a second assignment order, directing CirTran to transfer all revenue from its subsidiaries to ABS.

On October 20, 2010, CirTran sent ABS a letter demanding that, pursuant to Cal. Code Civ. Proc. § 724.050, ABS acknowledge that ABS's Judgment had been satisfied by its assignment to ABS of the copyrights. When discussions between the parties were not fruitful, on February 23, 2011, CirTran filed the Motion to Declare Judgment Fully Satisfied or Alternatively to Recoup Mutual

-7-

Debts (the "Fully Satisfied/Recoupment Motion."). In this motion, CirTran argued that the value of the copyrights it had transferred to ABS equaled the value the bankruptcy court had attributed to them when it calculated and awarded damages to ABS against CirTran in the Default Judgment. As a result, CirTran contended, the law of the case doctrine required that the court deem the Default Judgment satisfied. Alternatively, CirTran suggested that the court apply the doctrine of recoupment and order that the amount of CirTran's allowed unsecured claim in the bankruptcy case be offset against amounts owed by CirTran to ABS in ABS's Judgment.

After several continuances, the bankruptcy court conducted a hearing on CirTran's Fully Satisfied/Recoupment Motion on April 6, 2011. Before that hearing, the court posted a sixteen-page tentative ruling. In it, the court provided a summary of the positions of the parties, and distilled the dispute to two issues: (1) whether the law of the case doctrine applied in setting the value of the copyrights transferred from to ABS from CirTran, and (2) whether the doctrine of recoupment dictated that the Default Judgment be deemed at least partially satisfied by offsetting CirTran's allowed unsecured claim in the bankruptcy case against the amounts owed to ABS under the Default Judgment. The court rejected CirTran's arguments on both issues.

As to application of law of the case, the bankruptcy court tentatively ruled that the court had never previously determined the value of the copyrights; it had instead relied on the ABS expert witness valuation report in determining the amount of damages included in the Default Judgment, but that the report was a valuation of damages related to the royalty stream as of 2006,

-8-

and "did not value any particular asset." Tentative Ruling at 12, April 6, 2011. Because of this, the court determined that,

> An evidentiary hearing is necessary to determine the value of the copyright materials without the attendant trademark and patents. An evidentiary hearing will allow this court to determine the value of the copyright materials and apply that value towards a satisfaction (partial or total — depending on the outcome of the valuation hearing) of the judgment held by ABS.

Id.

As to CirTran's request for recoupment, the bankruptcy court's tentative ruling concluded that the respective claims of ABS and CirTran were not "based on the same aggregate set of operative facts to the degree necessary to establish a 'logical relationship' between the two claims of the parties." Id. at 16. Further, the court noted four instances of inequitable conduct by CirTran that would prevent application of the equitable recoupment doctrine in its favor: Cirtran's failures to meaningly participate in the adversary proceeding, to make voluntary payments on the Default Judgment, to comply with the bankruptcy court's orders regarding enforcement of the Default Judgment, and its delayed filing of the Fully Satisfied/Recoupment Motion. Id.

In summary, the bankruptcy court indicated in its tentative ruling its intent to deny the Fully Satisfied/Recoupment Motion, but to set an evidentiary hearing to determine the value the copyrights assigned by CirTran to ABS for credit against the Default Judgment. Id.

At the hearing on April 6, 2011, after hearing from counsel for ABS and CirTran, the bankruptcy court indicated that it would, for the most part, adopt the conclusions stated in its tentative rulings: "So the motion to declare the judgment fully satisfied

is not denied, because I don't know what the value is yet." Hr'g Tr. 47:11-13, April 6, 2011. "Recoupment does not apply." Hr'g Tr. 47:19.

At that point, the bankruptcy court engaged in a colloquy with counsel for ABS. Counsel reminded the bankruptcy court that CirTran's motion was for a declaration that the transfer of the copyrights was in "full satisfaction" of ABS's Judgment regardless of their value, or recoupment. The court acknowledged, "the motion is for full satisfaction or recoupment." Hr'g Tr. 51: 8-9, April 6, 2011. The court had already ruled in its tentative (incorporated in its final order) that the copyrights had value and that the value would be a credit against ABS's Judgment. Tentative Ruling at 11. ABS's counsel then argued successfully to the court that CirTran's motion seeking full satisfaction based on the mere transfer of the copyrights could not be allowed without some determination of the value of the copyrights. ABS's counsel then suggested that, although the Fully Satisfied/Recoupment Motion must be denied, CirTran could bring a motion for partial satisfaction of ABS's Judgment. Hr'g Tr. 49:25-50:1. The court agreed: "If you really want to go forward with what you ask, I will deny the motion and they can bring another one for partial satisfaction." Hr'g Tr. 51:22-25. After some further discussions, the bankruptcy court ruled: "[Fully Satisfied/Recoupment] Motion is denied." Hr'g Tr. 53:6. The court then directed ABS to submit an order stating that the motion is denied for the reasons stated in the tentative ruling and on the record. Hr'g Tr. 53:11-13. The order was entered on April 28, 2011.

-10-

CirTran filed this timely appeal.

## JURISDICTION

As discussed below, CirTran challenges the bankruptcy court's subject matter jurisdiction over this dispute under 28 U.S.C. § 1334 and § 157(b)(2). For the reasons that follow, we reject CirTran's challenge and conclude that the bankruptcy court did indeed have subject matter jurisdiction and the constitutional power to enter the judgment in the adversary proceeding and the order on appeal. The Panel has jurisdiction in this appeal under 28 U.S.C. § 158.

## ISSUES

Whether the bankruptcy court's Default Judgment must be vacated because the bankruptcy court lacked the constitutional authority to enter the judgment under 28 U.S.C. § 157(b)(2), as construed by Stern.

Whether the bankruptcy court abused its discretion in declining to apply the doctrine of law of the case.

Whether the bankruptcy court abused its discretion in declining to hold that the APS had been rescinded.

Whether the bankruptcy court abused its discretion in declining to apply the doctrine of recoupment.

## STANDARDS OF REVIEW

We review de novo questions involving the subject matter jurisdiction of the bankruptcy court. Cal. Franchise Tax Bd. v. Wilshire Courtyard (In re Wilshire Courtyard), ___ B.R. ___, 2011 WL 5041700 *5 (9th Cir. BAP 2011). We review the constitutionality of a federal statute de novo. United States v. Vongxay, 594 F.3d 1111, 1114 (9th Cir. 2010), cert. denied,

-11-

131 S.Ct. 294 (2010).

A bankruptcy court's decision regarding law of the case is reviewed for abuse of discretion. S. Ore. Barter Fair v. Jackson Cnty., Ore., 372 F.3d 1128, 1136 (9th Cir. 2004). A bankruptcy court's decision whether to apply recoupment is equitable in nature and reviewed for an abuse of discretion. Aalfs v. Wirum (In re Straightline Invests., Inc.), 525 F.3d 870, 882 (9th Cir. 2008). Likewise, the bankruptcy court's decision to apply, or not apply the equitable remedy of rescission is reviewed for abuse of discretion. Grupo Mexicano de Desarrollo v. Alliance Bond Fund, 527 U.S. 308, 324-25 (1999)(rescission is an equitable remedy); Labor / Cmty. Strategy Ctr. v. Los Angeles County Metro. Transp. Auth., 263 F.3d 1041, 1048 (9th Cir. 2001) ("A federal court enjoys broad equitable powers; its choice of equitable remedies is reviewed for an abuse of discretion.").

A bankruptcy court abuses its discretion if it bases a decision on an erroneous view of the law, or if its application of the law was illogical, implausible, or without support in inferences that may be drawn from the facts in the record. United States v. Hinkson, 585 F.3d 1247, 1262 (9th Cir. 2009); Ellsworth v. Lifescape Med. Assocs. (In re Ellsworth), 455 B.R. 904, 914 (9th Cir. BAP 2011).

**DISCUSSION**

**I.**

**CirTran may not challenge the bankruptcy court's**
**subject matter jurisdiction based upon Stern v. Marshall**

In its Opening Brief in this appeal, filed shortly after the Supreme Court decided Stern in June 2011, CirTran argues for the

-12-

first time that, based upon the Supreme Court's decision, the bankruptcy court lacked subject matter jurisdiction over the adversary proceeding in which the Default Judgment and order were entered, and from which this appeal arose. Ambitiously, CirTran requests that "the ABS complaint and its default judgment must thus be vacated and the ABS complaint dismissed." CirTran Op. Br. at 18.

ABS responds, arguing that, even after Stern, the bankruptcy court indeed had proper subject matter jurisdiction to entertain its action against CirTran because, among other reasons: the action arose out of CirTran's obligations under the APA; the Default Judgment is final, and not subject to collateral attack, even for lack of jurisdiction; and CirTran consented, and then waived any objection, to the bankruptcy court's power to adjudicate the adversary proceeding. ABS Op. Br. at 1, 14, 18.

CirTran's reply urges that a challenge to the subject matter jurisdiction of a trial court may be raised at any time, even on appeal, and that the parties could not create subject matter jurisdiction in the bankruptcy court by consent. CirTran Reply Br. at 4.

As explained below, we are skeptical whether, given the limitations on its holding, Stern would help CirTran in this appeal. More importantly, though, given the procedural posture of this action, we need not decide whether the constitutional issue addressed in Stern is implicated because CirTran's challenge to the bankruptcy court's jurisdiction is made far too late in the game.

In Stern, the Supreme Court held that a bankruptcy court

-13-

"lacked the constitutional authority to enter a final judgment on a state law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim" in a bankruptcy case. Stern, 131 S.Ct. at 2620. In deciding that, though 28 U.S.C. § 157(b)(2)(C) authorized the bankruptcy court to decide the merits of the bankruptcy estate's counterclaim against a creditor, such an exercise of judicial power by an Article I bankruptcy judge violated the Constitution, because "Congress may not bypass Article III simply because a proceeding may have some bearing on a bankruptcy case; the question is whether the action at issue stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process." Id. at 2618.

However, in the Stern decision, the Court instructed that its holding was a "narrow one," id. at 2620, that the constitutional infirmity in the bankruptcy court's reliance upon 28 U.S.C. § 157(b)(2)(C) was limited to "one isolated respect," id., that the Court doubted its decision would generate significant practical consequences, and that the Court "[did] not think that removal of counterclaims such as [the debtor's] from core bankruptcy jurisdiction meaningfully changes the division of labor in the current statute . . . ." Id. And more importantly for our purposes in addressing CirTran's arguments in this appeal, Stern also makes clear that 28 U.S.C. § 157, the statute considered by the Court, merely "allocates the authority to enter final judgment between the bankruptcy court and the district court," and contrary to CirTran's position here, "[t]hat allocation does not implicate questions of subject matter jurisdiction." Id. at 2607.

Given the convoluted procedural status of the contest facing

-14-

the Court in Stern, and the strictures expressed by the Court concerning the breadth of its holding, we seriously doubt that CirTran's argument has any traction that the bankruptcy court in this case "did not have subject matter jurisdiction over ABS's complaint" and that the Panel must "vacate the entry of the default judgment entered against CirTran . . . ." CirTran Reply Br. at 1. For one thing, if Stern did not restrict the bankruptcy courts' subject matter jurisdiction, but instead, dealt only with a litigant's constitutional right to have certain bankruptcy-related disputes decided by an Article III court, CirTran's failure to raise its concerns until this appeal is a formidable problem. As the Supreme Court noted, if CirTran really questioned the authority of the bankruptcy court to enter a final judgment under 28 U.S.C. § 157(b), "[it] should have said so – and said so promptly. See United States v. Oloano, 507 U.S. 725, 731, 113 S.Ct. 1770, 123 L.Ed. 508(1993) ("'No procedural principle is more familiar to this Court than that a constitutional right,' or a right of any other sort, 'may be forfeited . . . by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it.'"). Stern, 131 S.Ct. at 2608. Put another way, even if the holding in Stern is somehow applicable to this action, CirTran's challenge to the bankruptcy court's authority in this case is hardly "prompt."

Moreover, even if it was not waived, Cirtran's Stern-type attack on the bankruptcy court's constitutional authority to finally decide this dispute would be fraught with other challenges. The bankruptcy court entered a judgment in an adversary proceeding in which ABS, a chapter 11 debtor, sought to

-15-

enforce an agreement effectuating a § 363 sale of assets by the bankruptcy estate to CirTran, a major creditor, as part of the ABS's reorganization efforts, and where a significant portion of the consideration for the CirTran purchase consisted of a reduction in its creditor's claim in the bankruptcy case. As compared to the prebankruptcy tort claim examined in Stern, and even though ABS sued CirTran for breach of contract, it is not at all clear that the bankruptcy court lacked a constitutional basis under 28 U.S.C. § 157(b)(2) to entertain the action as a core proceeding, and therefore, to enter the Default Judgment. See 28 U.S.C. § 157(b)(2)(A), (N) and (O) (providing that core proceedings include, but are not limited to, matters concerning administration of a bankruptcy estate; orders approving sales of estate property; and other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor relationship).

But the Panel need not decide whether, even if timely presented, Stern would constitute an impediment to enforcement of the bankruptcy court's Default Judgment in this appeal. We therefore decline to address CirTran's constitutional challenge. To explain this conclusion, we again briefly recall the procedural history of this action.

When CirTran defaulted under the APA and, eventually, ABS sued CirTran in the bankruptcy court, CirTran failed to respond to the ABS complaint, and ABS was awarded the Default Judgment for nearly $2 million in money damages against CirTran. No appeal was taken by CirTran from that judgment. However, CirTran later moved to set aside the Default Judgment under Civil Rule 60(b), and when

-16-

the bankruptcy court rejected that effort, CirTran appealed its order to the district court. But that appeal was dismissed when CirTran failed to prosecute it.

ABS then pursued various proceedings against CirTran in the bankruptcy court to enforce and collect the Default Judgment. The bankruptcy court entered several orders supporting ABS's efforts to get paid, culminating in an order directing CirTran to return the copyrights it had purchased under the APA to ABS. After return of the copyrights, and almost two years after entry of the Default Judgment, CirTran filed a motion asking that the bankruptcy court deem the Default Judgment satisfied. When the court denied that motion, CirTran appealed to the Panel.

We recap the status of this action because, in our view, even if we were inclined to credit CirTran's argument that the bankruptcy court somehow lacked the constitutional power or jurisdiction to enter the Default Judgment, clearly, CirTran long ago lost its right to challenge the bankruptcy court's rulings. While CirTran contends otherwise, a party does not have a timeless right to challenge the subject matter jurisdiction of the trial court that enters a final judgment against that party. Indeed, the Supreme Court has held that, subject to narrow exceptions not applicable here, a bankruptcy court's final orders are not subject to a subsequent collateral attack based upon a challenge to its subject matter jurisdiction. Traveler's Indem. Co. v. Bailey, 557 U.S. 137, ___, 129 S.Ct. 2195, 2205-06 (2009). So long as a party to an action is given a fair chance to challenge the bankruptcy court's subject matter jurisdiction, it cannot attack it later by resisting the enforceability of its orders. Id. at 2206, citing

-17-

_Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinée_, 456 U.S. 694, 702 n.9 (1982) ("A party that has had an opportunity to litigate the question of subject matter jurisdiction may not . . . reopen that question in a collateral attack upon an adverse judgment."). The Ninth Circuit has amplified this rule in several of its decisions. <u>See</u>, <u>e.g.</u>, <u>City of S. Pasadena v. Mineta</u>, 284 F.3d 1154, 1157 (9th Cir. 2002); <u>Trulis v. Barton</u>, 107 F.3d 685, 691 (9th Cir. 1995).

In this case, CirTran allowed the Default Judgment to be entered against it in the adversary proceeding without opposition. That Default Judgment became final when no appeal was taken. Moreover, CirTran then asked the bankruptcy court for relief under Civil Rule 60(b), arguing that it did not receive notice of the request for entry of the Default Judgment and that it had meritorious defenses to ABS's claims.[5] The bankruptcy court rejected both arguments and denied the motion. CirTran did appeal

---

[5] Of course, CirTran could have sought relief, but did not, by arguing that the Default Judgment was void for lack of the bankruptcy court's subject matter jurisdiction. Civil Rule 60(b)(4); CirTran's motion was premised solely upon Civil Rule 60(b)(1). However, even the right to obtain relief from an otherwise void bankruptcy court judgment under Civil Rule 60(b)(4) has temporal limits. <u>See</u>, <u>e.g.</u>, <u>Central Vt. Pub. Serv. Corp. v. Herbert</u>, 341 F.3d 186, 189-190 (2d Cir. 2003) (in a case where the movant argued that a bankruptcy court had impermissibly entered a final judgment in a non-core proceeding with the parties' consent, that a motion for relief from the judgment should be denied because Civil Rule 60(b)(4) may not be used as a substitute for a timely appeal, and is only available when the bankruptcy court plainly usurped jurisdiction or, put somewhat differently, where there was a total want of jurisdiction and no arguable basis on which the bankruptcy court could base subject matter jurisdiction.)

-18-

that order, but then allowed the appeal to be dismissed for lack of prosecution of the appeal. In other words, the order denying CirTran relief from the Default Judgment is also final.

Given this track record, we conclude that CirTran's latest attempt to avoid its obligations under the Default Judgment are simply too little, too late. CirTran's argument on appeal that the bankruptcy court lacked subject matter jurisdiction to enter the Default Judgment amounts to a prohibited collateral attack on that judgment. Even if CirTran's argument had merit, which we doubt, we decline to consider it under these circumstances.

## II.

### The bankruptcy court did not err in denying the Motion to Declare Judgment Fully Satisfied or Alternatively to Recoup Mutual Debts.

**A. The bankruptcy court did not err in declining to apply law of the case to consider the Default Judgment fully satisfied.**

In the bankruptcy court, CirTran argued that the court relied on the valuation of ABS's expert witness of the intellectual property assets transferred on which the Default Judgment was based. According to CirTran, because the value of the copyrights it transferred back to ABS equaled the value the bankruptcy court attributed to them when awarding the Default Judgment to ABS, the law of the case doctrine requires the bankruptcy court to consider the Default Judgment fully satisfied. Like the bankruptcy court, we disagree with CirTran's position.

The law of the case doctrine precludes a court "from reconsidering an issue previously decided by the same court, or a higher court in the identical case." United States v. Lummi Indian Tribe, 235 F.3d 443, 452 (9th Cir. 2000). The doctrine is

-19-

not a limitation on the court's power, but a guide to the exercise of its discretion. United States v. Alexander, 106 F.3d 874, 876 (9th Cir. 1996). For law of the case to apply, the issue in question must have been decided explicitly or by necessary implication by the court or a higher court. Hydrick v. Hunter, 500 F.3d 978, 986 (9th Cir. 2007). Even so, a court has discretion to ignore law of the case under these conditions: (1) the first decision was clearly erroneous; (2) there has been an intervening change in the law; (3) the evidence on remand is substantially different; (4) other changed circumstances exist; or (5) a manifest injustice would otherwise result. United States v. Renteria, 557 F.3d 1003, 1006 (9th Cir. 2009).

The bankruptcy court correctly applied this case law in declining to apply law of the case, and in refusing to equate the value it used in calculating the Default Judgment with the value of the copyrights re-transferred by CirTran to ABS in 2010. The bankruptcy court, examining its own Default Judgment, found that the judgment was based on damages resulting from the breach of the APA regarding payment of a royalty stream, not on the value of any particular intellectual property. There is nothing in the record to suggest the contrary. We owe "substantial deference" to a court's interpretation of its own orders. Marciano v. Fahs (In re Marciano), ___ B.R. ___, 2011 WL 5041396 *25 (9th Cir BAP 2011). We therefore conclude that the bankruptcy court did not abuse its discretion in declining to apply law of the case.

**B.     The bankruptcy court did not abuse its discretion in declining to apply the equitable doctrine of rescission to deem the Default Judgment fully satisfied.**

For the first time on appeal, CirTran argues that, "[in

-20-

ordering CirTran to return all of the assets that it had purchased from ABS through the APA, the [bankruptcy] court effected a rescission of the APA, and in failing to grant CirTran's request for an order recognizing that the judgment was satisfied by this judicially created rescission, the trial court erred." CirTran Op. Br. at 22. There are at least two critical infirmities in this argument.

First, as noted, this argument was not made in the bankruptcy court. We have discretion to review newly presented issues on appeal if "(1) there are 'exceptional circumstances' why the issue was not raised in the trial court, (2) the new issue arises while the appeal is pending because of a change in the law, or (3) the issue presented is purely one of law and the opposing party will suffer no prejudice as a result of the failure to raise the issue in the trial court." Rhoades v. Henry, 598 F.3d 495, 501 n.7 (9th Cir. 2010). CirTran has not argued that any of these exceptions to the rule against allowing a new argument on appeal apply. Instead, it asserts that the argument was raised in its Memorandum in Support of Motion to Declare Judgment Satisfied, at dkt. 126. For support, CirTran simply refers to a document filed in the bankruptcy court by docket number, without additional citation to the precise page in the document in which its rescission argument is found. But this document, docket no. 126 in the adversary docket, is a pleading containing 56 pages of text. We have examined the pleading, but did not locate any reference to its argument that the bankruptcy court's order that it return the copyrights to ABS effected a "rescission" of the APA. ABS likewise indicates that it also examined dkt. no. 126, as well as

-21-

dkt. no. 145 (CirTran's Reply Memorandum), and failed to find any reference to the bankruptcy court's rescission of the APA.

Even if some oblique reference to something that could be identified as a rescission argument is in the papers generally cited by CirTran, that argument apparently failed to draw any attention from the bankruptcy court or the other party to this dispute. Under these circumstances, we conclude this argument was not presented to the bankruptcy court, and we decline to consider it anew on appeal.[6]

Second, even if we were to examine the issue, CirTran's argument lacks merit. The purpose of a rescission, according to the case law cited by CirTran, is "to restore the parties as nearly as possible to their former positions and to bring about substantial justice by adjusting the equities between the parties despite the fact that the status quo cannot be exactly

[6] At oral argument before the Panel, counsel for CirTran argued that it raised the rescission argument at the April 6, 2011 hearing. To support this claim, counsel referred us to Tab I of the excerpts of record. Of course, Tab I consists of 73 pages and CirTran, once again, has failed to provide us a workable citation to the appropriate pages in the record. Even so, the Panel examined Tab I, and while there are several passing references to rescission, these references lack any sort of structured analysis, nor do they include any citations to case or statutory authority. Such "arguments," raised in the bankruptcy court in passing without citation to authority or thoughtful legal argument, do not meet the requirements for preserving an argument for appeal. The Ninth Circuit counsels that it will not consider arguments that are not "properly raise[d]" in the trial courts." Rothman v. Hospital Serv. of S. Cal., 510 F.2d 956, 960 (9th Cir. 1975). Although there is no bright-line rule to determine whether an issue has been properly raised, the "workable standard" adopted by the Panel is that the argument must be raised sufficiently for the trial court to rule on it. Franchise Tax Bd. v. Roberts (In re Roberts), 175 B.R. 339, 344 (9th Cir. BAP 1994) (citing Whittaker Corp. v. Execuair Corp., 953 F.2d 510, 515 (9th Cir. 1992)). By any standard, CirTran failed to properly raise a rescission argument such that the bankruptcy court would be expected to have addressed it.

-22-

reproduced." Sharabianolou v. Karp, 181 Cal. App.4th 1133, 1144 (Cal. Ct. App. 2010). There is nothing in the record to indicate that the bankruptcy court was "adjusting the equities" by ordering CirTran to turn over the copyrights in the first assignment order, or that somehow, such a transfer was intended to completely satisfy the Default Judgment. That the bankruptcy court did not intend to engage in a balancing of the parties' equities was demonstrated by its second assignment order, entered shortly after the first assignment order, where it directed CirTran to compel its subsidiaries to make all future payments to ABS. In short, there is no evidence here that the bankruptcy court, when it ordered CirTran to transfer the copyrights to ABS, intended the transfer to constitute a rescission of CirTran's and ABS's obligations under the APA. In contrast to effecting a rescission, the court's orders were designed to enforce its judgment and getting ABS paid.

Third, we find no support in the record that the bankruptcy court ordered that all of the intellectual property originally sold to CirTran must be returned to ABS. The first assignment order was restricted to retransfer of the copyrights. It was understood at the time of the first assignment order that CirTran would have difficulty transferring the trademarks because CirTran's secured creditor, YA Global, held a security interest in them. At the hearing on April 6, 2011, the attorney for YA Global made an offer to resolve issues regarding the trademarks:

> FRIEDMAN [YA Global Attorney]: I realize that we didn't file any papers on this specific motion, but I have a contribution that I think might be useful for the parties that do have an issue here.

-23-

It's true that YA Global currently asserts a security interest in the trademarks]. My understanding is that the [CirTran] is not currently utilizing those trademark nor attempting to protect them.

My proposal would be that YA Global would be willing to give a partial lien release, but only with respect to those True Ceramic Pro flat iron trademarks, so that hopefully CirTran and ABS would be able to arrange for a transfer back to ABS so that they can then hopefully resolve this matter.

I think that might contribute. Reading the Court's tentative ruling and also the papers filed by the parties, I think that might contribute to the parties being able to resolve the issue over the split of the intellectual property, and possibly either partial or full satisfaction of the judgment.

THE COURT: Okay. Thank you. I would love to get that in writing. That would be good.

Hr'g Tr. 7:18–8:16, April 6, 2011.

There are implications in this colloquy. It shows that, as of the hearing, the trademarks had not been transferred from CirTran to ABS. The bankruptcy court had never directed their transfer. Thus, CirTran's rescission argument that the bankruptcy court had ordered "CirTran to return all of the assets that it had purchased from ABS through the APA" is contrary to the record.

There is also no evidence in the record regarding what the bankruptcy court would do if, and when, YA Global released its lien on the trademarks. It would appear from the comments of YA Global's attorney, an observer at the hearing whose client held a vested interest in the settlement of the dispute between ABS and its debtor, that counsel was expecting the parties to "resolve the issue" of disposition of the trademarks.

In sum, the record does not support CirTran's argument that the bankruptcy court's various turnover orders were intended to effect a "rescission" of the APA.

-24-

**C.  The bankruptcy court did not abuse its discretion in declining to apply the equitable doctrine of recoupment.**

"The doctrine of recoupment is equitable in nature, and its use is permissive and reviewed for abuse of discretion." In re Straightline Invs., 525 F.3d at 882 (quoting Oregon v. Harmon (In re Harmon), 188 B.R. 421, 424 (9th Cir. BAP 1995) (citing Pieri v. Lysenko (In re Pieri), 86 B.R. 208, 210 (9th Cir. BAP 1988)). Recoupment may be applied in a bankruptcy case. Reiter v. Cooper, 507 U.S. 258, 265 n.2, (1993) (observing that courts have allowed the use of recoupment in bankruptcy cases).

In recoupment, the parties' respective claims may arise either before or after the commencement of the bankruptcy case, but they must arise out of the same transaction. Newbery Corp. v. Fireman's Fund Ins. Co., 95 F.3d 1392, 1399 (9th Cir. 19960. The "same transaction" requirement essentially distinguishes recoupment from "setoff" or "offset," a similar equitable doctrine of debt adjustment, governed by § 553, which requires the existence of mutual, prepetition debts. Lee v. Schweiker, 739 F.2d 870, 875 (3rd Cir. 1984).

In this case, the bankruptcy court determined that CirTran's claim against ABS was based on ABS's breach of its prebankruptcy contract to pay CirTran to manufacture the Product. In contrast, the bankruptcy court found that ABS's Default Judgment was based on CirTran's post-bankruptcy breach of the APA, and its failure to pay ABS royalty payments. Thus, the bankruptcy court concluded, the respective claims of CirTran and ABS were not based on the same "aggregate set of operative facts" to the degree necessary to create a "logical relationship" between the claim and the Default

-25-

Judgment.

The bankruptcy court properly concluded that, without the logical relationship, there could be no recoupment. The court based its decision on a correct interpretation of law, and its application of the law was not illogical, implausible, or without support in inferences that may be drawn from the facts in the record.

## CONCLUSION

We reject CirTran's argument, based upon Stern, that the bankruptcy court's Default Judgment must be vacated because it lacked subject matter jurisdiction to enter that final order or the order on appeal. Even if there were merit to CirTran's invocation of Stern under these facts, which we doubt, its argument amounts to an inappropriate collateral attack on a final judgment.

We also conclude that the bankruptcy court did not abuse its discretion in its rulings concerning application of law of the case and recoupment. CirTran's rescission argument was never properly raised in the bankruptcy court.

Finally, we affirm the decision of the bankruptcy court insofar as it holds that denial of the motion does not preclude a later motion by CirTran and an evidentiary hearing if necessary to deem ABS's judgment satisfied to the extent of the value of the copyrights.

Accordingly, the order of the bankruptcy court is AFFIRMED.

-26-